**UNITED STATES, Appellee,**

v.

**Eric G. GIBSON Seaman Recruit, U.S. Navy, Appellant.**

No. 47162.

NMCM 83 1378.

U.S. Court of Military Appeals.

Jan. 16, 1984.

For Appellant: *Lieutenant Commander Jeanne Carroll, JAGC, USN* (on petition).

For Appellee: No appearance filed pursuant to Rule 21(e).

*Opinion of the Court*

COOK, Judge:

Pursuant to his pleas, the accused was convicted by general court-martial, military judge alone, of four specifications of absence without leave and two specifications of missing movement through design, in violation of Articles 86 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 887, respectively. The military judge sentenced appellant to a bad-conduct discharge, confinement at hard labor for 6 months, and forfeiture of $350.00 pay per month for 6 months. In accord with a pretrial agreement and the recommendations of the military judge, the convening authority approved the adjudged sentence, but suspended for 12 months execution of the portions thereof adjudging a bad-conduct discharge, confinement at hard labor in excess of 3 months, and forfeitures in excess of $350.00 pay per month for 3 months. The United States Navy-Marine Corps Court of Military Review affirmed the findings and sentence in a memorandum opinion. Although the case was submitted to us on the merits, we specified the following issue:

> WHETHER APPELLANT'S PLEA OF GUILTY TO SPECIFICATION 2, CHARGE II, WAS IMPROVIDENT BECAUSE THE MOVEMENT ALLEGEDLY MISSED BY APPELLANT IS NOT THE TYPE OF MOVEMENT CONTEMPLATED BY ARTICLE 87, UNIFORM CODE OF MILITARY JUSTICE. *SEE UNITED STATES V. GRAHAM,* 14 M.J. 223 (DAILY JOURNAL, 1982).

We here decide that the movement was not that contemplated by Article 87 and dismiss that specification.

The sole "evidence" before us relating to specification 2 of Charge II is contained in the accused's responses during the providence inquiry. There, the following dialogue was reported:

MJ: Now with respect to Specification 2 under Charge II, did you know you were supposed to take a flight at 0910 on 10 May 1982?

ACCUSED: Yes, I did, sir.

MJ: Now at the Philadelphia International Airport, did you miss that flight?

ACCUSED: Yes, I did, sir.

MJ: How did you know you were supposed to make that flight?

ACCUSED: I was informed by legal hold members of me supposed to be on it on Monday morning, May 10th.

MJ: Did you have a ticket or orders that had this flight written on it?

ACCUSED: Yes, sir. I was issued a ticket and orders.

MJ: Did you show up at Philadelphia International Airport at 9:10 on 10 May 1982?

ACCUSED: No, sir, I did not.

MJ: Why didn't you?

ACCUSED: I had to get sufficient evidence together for certain things so I could come back and turn myself in. That's why I was speaking to my lawyer. It was basically the same reason I'd stayed in Australia, sir.

\* \* \* \* \* \*

MJ: And your missing this flight was not accidental?

ACCUSED: No, sir.

MJ: And had you wanted to, could you have been there at 0910 on 10 May 1982, to catch that flight?

ACCUSED: Yes, sir.

MJ: And you want to admit in court that you were legally required in the course of your duties to take that flight?

ACCUSED: Yes, sir.

Since specifying the issue here, we have published our decision in *United States v. Graham,* 16 M.J. 460 (C.M.A.1983). Therein we examined the legislative history of Article 87 and our decision in *United States v. Johnson,* 3 U.S.C.M.A. 174, 11 C.M.R. 174 (1953), and concluded:

The rationale for the choice of "ship" and "aircraft" in Article 87 is apparent. Congress contemplated that these methods of transportation would be employed for long distance troop movements, and the disruption to military operations because of a failure to move aboard a ship or an aircraft would be greater than the failure to move on a truck or car.... Consequently, the effects that follow such a delict go beyond a mere failure to go to a place of duty, and such conduct merits more punishment than would be appropriate had the vehicle involved been only a truck or car.

Of course, such reasoning would not necessarily apply in the situation where the serviceperson is merely given a commercial transportation request and told to report at some time in the future. In such case, the gravamen of the failure to report is not necessarily related to the missing movement and lies more properly within the area of absence without leave.

However, when a serviceperson is ordered to move aboard a specific aircraft or ship, military or chartered, and, through design or neglect, fails to move with that aircraft or ship, Article 87 is violated. The extent of the foreseeable disruption caused in the particular case is, of course, a matter of aggravation or mitigation.

*Id.* at 464.

In the instant case it would appear that the accused, having returned from an unauthorized absence, was given a ticket and orders to report for a commercial flight from Philadelphia to Norfolk, Virginia. We may surmise that the Navy would have been satisfied had the accused caught any flight from Philadelphia that would have returned him to Norfolk on that day. In any event, the "foreseeable disruption" to naval operations caused by his failure to make the particular flight is not of such magnitude as to require the more severe punishment afforded by the application of Article 87.

The decision of the United States Navy-Marine Corps Court of Military Review affirming the finding of guilty of specification 2 of Charge II is reversed, said finding is set aside, and that specification is dismissed. We are convinced that the sentence imposed on the accused is not affected by our action here. In all other respects the decision of the Court below is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.