## UNITED STATES

### v.

### John L. RAY, 366 78 2466, Hospitalman (E-3), U.S. Naval Reserve.

### NMCM 91 2006.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 23 April 1993.

Decided 26 May 1993.

---

LT Randall L. Chambers, JAGC, USNR, Appellate Defense Counsel.

LT K.S. Anderson, JAGC, USNR, Appellate Government Counsel.

Before JONES, REED and LAWRENCE, JJ.

PER CURIAM:

Pursuant to his pleas, appellant was convicted by general court-martial, military judge alone, of a failure to go and the willful disobedience of a chief petty officer, in violation of Articles 86 and 91, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 891. Appellant was convicted contrary to his pleas of missing movement through design, in violation of Article 87, UCMJ, 10 U.S.C. § 887. The military judge sentenced him to a dishonorable discharge, confinement at hard labor for 10 months, reduction to pay grade E-1, and total forfeiture of all pay and allowances. The convening authority approved the sentence, but in accordance with the pretrial agreement, mitigated the dishonorable discharge to a bad conduct discharge and suspended all confinement for a period of 12 months.

All three charges stemmed from appellant's determination not to carry out his orders to report along with three other corpsmen from Naval Hospital, Great Lakes, Illinois to the Second Medical Battalion, Camp Lejeune, North Carolina, for "temporary additional duty" [TAD] in support of Operation Desert Shield. On December 18, 1990, appellant was informed by his Command Master Chief of his TAD orders and was ordered to begin check-out procedures for deployment. Appellant was also directed to report to the Naval Hospital quarterdeck at 0930 December 20, 1990, to pick up his government procured plane ticket and TAD orders, and for van transportation to Chicago's O'Hare Airport for a commercial flight leaving at 1200 that day. Appellant never completed his check-out procedures for deployment. On the morning of December 20, 1990, appellant refused to report to the quarterdeck and stated, "I will not go until I see the C.O." Appellant never reported to the quarterdeck and subsequently missed his scheduled flight that would have linked him up with the Second Medical Battalion, Camp Lejeune.

■ Appellant's initial contention is that as a matter of law, he is not guilty of missing movement through design because his missing movement of a commercial air-

liner is not the type of movement contemplated by Article 87, UCMJ, citing *United States v. Gibson,* 17 M.J. 143 (C.M.A.1984).

Prior to *Gibson,* the term "movement," as of a ship or aircraft, was interpreted broadly, that is, "it is the missed 'move,' not the mode of moving that is significant." *United States v. Graham,* 16 M.J. 460, 461 (C.M.A.1983). In general, "when a serviceperson is ordered to move aboard a specific aircraft or ship, military or chartered, and, through design or neglect, fails to move with that aircraft or ship, Article 87 is violated. The extent of the foreseeable disruption caused in the particular case is, of course, a matter of aggravation or mitigation." *Graham,* 16 M.J. at 464; *see also United States v. Johnson* 3 C.M.A. 174, 11 C.M.R. 174 (1953); *United States v. St. Ann,* 6 M.J. 563 (N.C.M.R.1978) (where one is, pursuant to orders, under a duty to go to a specific place, the failure to make the required movement is an offense cognizable under Article 87, UCMJ) (citing *United States v. Lemley,* 2 M.J. 1196 (N.C.M.R. 1976)), *petition denied,* 7 M.J. 392 (C.M.A. 1979).

In *Gibson,* the Court of Military Appeals limited the application of Article 87 in the case of servicemembers ordered to move individually on a commercial airline flight. The Court required some nexus between the missing of the flight and the "foreseeable disruption" to naval operations caused by an accused's missing a particular flight so as to warrant the more severe punishment provided under Article 87. *Gibson* at 144.

Our case, in which appellant had a specific operational mission to support, differs significantly from the situation in *Gibson,* where the accused had recently returned from an unauthorized absence status, and no evidence of any operational requirement for the specific flight returning him to his command for disciplinary purposes was presented. Since the decision in *Gibson,* several scenarios in which an accused missed a commercial airline flight have been determined to be foreseeably disruptive to operations; *United States v. Blair,* 24 M.J. 879 (A.C.M.R.1987), *aff'd,* 27 M.J.

438 (C.M.A.1988) (moving from or to an overseas permanent change of station aboard a specific flight); *United States v. Stroud,* 27 M.J. 765 (A.F.C.M.R.1988), *petition denied,* 28 M.J. 335 (C.M.A.1989) (foreseeable disruption existed to support conviction based on accused's failure to use ticket he was issued for specific commercial flight on which Government had purchased block of seats; it was likely seat reserved for accused went unused, his failure to report for movement was disruptive to those responsible for making flight arrangements at point of departure, and accused's training as aircraft armament systems specialist was job presumably of considerable importance to tactical fighter operation in European theater).

In our case, it was reasonably foreseeable that appellant's missing movement would be disruptive to naval operations. At the time of appellant's orders, the United States was engaged in the massive movement of servicemembers and supplies to Southwest Asia. From the record of trial we are aware that the Secretary of the Navy had suspended provisions for separation of personnel in appellant's rating as a corpsman because their continued service was essential to the national interest. Appellant's TAD orders listed the reason for travel as "Operation Desert Shield." After training at Camp Lejeune, appellant was to be assigned to the USS GUAM, deployed to the Persian Gulf. The military judge correctly found that appellant's refusal to board a commercial airline flight reserved by the government in connection with orders to an important military operation violated Article 87, UCMJ.

■ Appellant also asserts error in that he was not served with a copy of the staff judge advocate's [SJA] recommendation as required by Rule for Courts–Martial 1106(f)(1), although the recommendation was served upon trial defense counsel, who declined comment. The record is devoid of any indication that appellant was ever served with a copy of the recommendation as he had requested at trial. Affirmative proof of service, however, is not required. Appellant must offer some evidence to re-

but the presumption that the SJA has properly executed his duties. *United States v. Diaz–Carrero,* 31 M.J. 920 (A.C.M.R.1990), *petition denied,* 32 M.J. 484 (C.M.A.1991). Even if the SJA failed to serve a copy of his recommendation on appellant, appellant has not submitted any matters to this court that he requests the convening authority to review, nor has he asserted that any inaccuracies that may exist in the SJA's recommendation have resulted in prejudice to him. Absent the averment of those matters, the SJA's failure to serve appellant with a copy of his recommendation under 1106(f)(1) is harmless error. Article 59(a), UCMJ; *United States v. DeGrocco,* 23 M.J. 146 (C.M.A.1987).

The findings and sentence as approved on review below are affirmed.