**UNITED STATES, Appellee,**

v.

**Specialist Daniel GONZALEZ, United States Army, Appellant.**

ARMY 20020744.

U.S. Army Court of Criminal Appeals.

21 July 2004.

For Appellant: Major Imogene M. Jamison, JA; Captain Mary E. Card, JA (on brief); Colonel Robert D. Teetsel, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Imogene M. Jamison, JA; Captain Mary E. Card, JA (on specified issues).

For Appellee: Lieutenant Colonel Margaret B. Baines, JA (on brief); Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Jennifer H. McGee, JA; Captain Matthew J. MacLean, JA (on specified issues).

Before HARVEY, Senior Judge, MERCK, Senior Judge, and SCHENCK, Appellate Military Judge.

## OPINION OF THE COURT

SCHENCK, Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of absence without leave, missing movement (three specifications), willful disobedience of a superior commissioned officer, drunk on duty, wrongful use of marijuana (two specifications), and breaking restriction in violation of Articles 86, 87, 90, 112, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 887, 890, 912, 912a, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for seven months, and reduction to Private E1. Appellant's case is before this court pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

We hold that appellant's guilty pleas to two specifications of missing movement through design were provident because appellant had verbal orders from his commander not to change those two flights.[1] We hold that appellant's guilty plea to missing movement through neglect was improvident because the military judge failed to elicit from appellant factual admissions to support a finding that appellant was neglectful in missing his scheduled flight. We considered the allied papers[2] in deciding these issues. We

did not consider the possibility of "foreseeable disruption" to military operations because we hold that "foreseeable disruption" is not a required element of missing movement. We also hold that the military judge erred by accepting appellant's plea to drunk on duty because the providence inquiry does not clearly establish that appellant ever reported for duty while drunk.

## I. MISSING MOVEMENT

### A. Facts

Pursuant to his pleas, appellant was found guilty of missing movement through neglect on 16 December 2001 (Specification 3 of Charge II) and through design on 16 January 2002 and 27 January 2002 (Specifications 2 and 1 of Charge II, respectively). Each of these three specifications allege that appellant missed a specific commercial airline flight on the dates indicated. On each date, appellant was to fly to Korea pursuant to his permanent change of station (PCS) orders. When appellant missed his first flight on 16 December, his command escorted him to the Fort Carson travel office for rescheduling; this first missed flight was rescheduled. When appellant missed the 16 January flight, his command again escorted him to the travel office for rescheduling; appellant's flight was again rescheduled.

The stipulation of fact, agreed to by all parties and admitted into evidence without objection, indicates appellant "was required pursuant to his military orders to get on" each flight on the dates alleged. During the providence inquiry, appellant admitted on each occasion that he knew of the flight, had a duty or obligation to board the plane, missed the flight through neglect or design (as alleged), and did not make any independent attempts to reschedule the missed flights. Appellant's PCS orders and amendments from the allied papers reflect reporting dates "not later than" four days after each of the scheduled flights. Appellant's "TRAVELOPEs" for the first and third

1. See note 4 infra.

2. Allied papers are documents attached to the transcript of the proceedings, but not admitted into evidence at trial. See Rule for Courts–Martial [hereinafter R.C.M.] 1103(b)(3).

scheduled departure flights (also located in the allied papers) include the statement, "I understand that if I fail to report to the above named airport for transportation on the date and time stated above[,] I will be subject to disciplinary action under the Uniform Code of Military Justice (UCMJ)." [3]

## Allied Papers

Whether appellant's airline tickets could be changed and still allow appellant to report on time is an important issue in appellant's missing movement offenses.[4] The allied papers indicate that appellant's commercial airline tickets were refundable.[5] In order to eliminate the possibility of ineffective assistance of counsel, we ordered appellant's trial defense counsel to provide a post-trial affidavit. *See United States v. Lewis*, 42 M.J. 1, 6 (C.A.A.F.1995). Trial defense counsel subsequently stated appellant informed him that appellant's chain of command "ordered [appellant] to be on the specific flights.... Technically speaking although the tickets say a refund was authorized, [appellant] personally was not authorized to change the flights

without permission of his command." Essentially, trial defense counsel asserts that since appellant was *ordered* not to change his flights he *could not* exchange his tickets.

Appellate government counsel concede that, absent the chain of command's orders to be on specific flights, the travel office "would have allowed" appellant to exchange his commercial airline ticket without a military official's approval or intervention. Given the government's concession, appellant still could have arrived in Korea by his "not later than" reporting date.

The government urges us not to consider the allied papers in our review of appellant's case. Without specifying any facts that are in doubt, appellate government counsel argue that to do so would place the government at an unfair disadvantage on appeal. While the law does not permit us to consider allied papers and excluded evidence in contested cases,[6] our superior court has not specifically precluded us from considering extra-record matters in our review of guilty plea cases.[7]

3. A signature purporting to be appellant's appears on both documents on a line indicating, "Traveler's Signature."

4. In *United States v. Kapple*, 40 M.J. 472, 473–74 (C.M.A.1994), our superior court held the government failed to prove that Airman Kapple was required to move with a specific unit because there was "no evidence that [Airman Kapple] was required to travel aboard [a] specific [commercial] aircraft." Airman Kapple had a refundable ticket and could have exchanged it without a military official's approval or intervention and still have arrived at his new duty station by the "not later than" report date of five days after the scheduled flight. *Id.* at 473. Accordingly, the court set aside Airman Kapple's conviction for missing movement. *Id.* at 474.

5. Appellant's "Passenger Receipt" for the third scheduled flight was stamped with the word, "REFUND," and a corresponding "Itinerary" document, indicates that the fare amount was "refunded back" to a specified account number. Each of the three "Itinerary" documents corresponding to the three missed flights include the statements, "MAIL REFUNDS W/2 COPIES OF ORDERS" and "2 COPIES OF YOUR ORDERS ARE REQUIRED TO PROCESS AIRLINE TICKET REFUNDS."

6. *See United States v. Holt*, 58 M.J. 227, 232 (C.A.A.F.2003); *United States v. Gray*, 51 M.J. 1, 15 (C.A.A.F.1999) (citing *United States v. Bethea*,

22 U.S.C.M.A. 223, 46 C.M.R. 223, 1973 WL 14486 (1973)). We may, however, in contested cases consider post-trial affidavits to clarify collateral matters, such as unlawful command influence or ineffective assistance of counsel, or to decide whether to order a post-trial sanity hearing. *Id.*

7. The Court of Military Appeals has stated that a guilty plea precludes the need for the prosecution to "fully develop[] facts" and "put[] its entire case on record." *United States v. Quezada*, 40 M.J. 109, 111 (C.M.A.1994) (citing *United States v. Burnette*, 35 M.J. 58, 60 (C.M.A.1992)). Earlier cases seem to authorize our review of the allied papers in guilty plea cases. *See United States v. Johnson*, 49 C.M.R. 467, 468, 1974 WL 14105 (A.C.M.R.1974), *aff'd on other grounds*, 1 M.J. 36, 38–39 (C.M.A.1975) (holding that service court appropriately modified guilty plea findings to conform with facts in Article 32, UCMJ, hearing to correct distortion in record created by counsel's misrepresentations), *sentence rev'd on further consideration*, 1 M.J. 291 (C.M.A.1976); *United States v. Turner*, 11 M.J. 784, 788 n. 3 (A.C.M.R.1981) ("It has long been held that this Court may consider matters contained in the entire record, including the Article 32 investigation, in determining the providency of appellant's plea of guilty."); *United States v. Stouffer*, 2 M.J. 528, 529–30 (A.C.M.R.1976); *United States v. McKee*, 42 C.M.R. 797, 798, 1970 WL 7234 (A.C.M.R.1970); *cf. United States v. Williams*, 15 U.S.C.M.A. 65, 66, 35 C.M.R. 37, 38, 1964 WL

We considered the allied papers in appellant's case to ensure that appellant received effective assistance of counsel and to fulfill our Article 66(c), UCMJ, responsibility, that is, to affirm guilty findings that are correct in law and fact and that should be approved based on the entire record.

### B. Law

This court reviews a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996). We use a *"substantial basis* test for appellate review of the providence of guilty pleas" [8] and will not overturn a guilty plea unless the record of trial shows a substantial basis in law and fact for questioning the guilty plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

"The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e). The facts disclosed by such inquiry must objectively support the guilty plea. *United States v. Garcia*, 44 M.J. 496, 497–98 (C.A.A.F.1996). Should the accused set up a matter inconsistent with the plea at any time during the proceeding, the military judge must "either resolve the apparent inconsistency or reject the [guilty] plea." *Id.* at 498; *see* UCMJ art. 45(a), 10 U.S.C. § 845; *Davenport*, 9 M.J. at 367.

Article 87, UCMJ, provides, "Any person . . . who through neglect or design misses the movement of a ship, aircraft, or unit with which he is required in the course of duty to move shall be punished as a court-martial may direct." The elements of this offense are as follows:

(1) That the accused was required in the course of duty to move with a ship, aircraft or unit;

(2) That the accused knew of the prospective movement of the ship, aircraft or unit;

(3) That the accused missed the movement of the ship, aircraft or unit; and,

(4) That the accused missed the movement through design or neglect.

*Manual for Courts–Martial, United States* (2002 ed.) [hereinafter *MCM*, 2002], Part IV, para. 11b. An aircraft or unit movement involves a "substantial distance and period of time." *Id.* at Part IV, para. 11c(1). If a service member is ordered to move as a *"passenger* aboard a particular . . . aircraft, military or chartered, then missing the particular . . . flight is essential to establish the offense of missing movement." *Id.* at Part IV, para. 11c(2)(b) (emphasis added).[9]

"[W]hen a serviceperson is ordered to move aboard a specific aircraft or ship, military or chartered, and, through design or neglect, fails to move with that aircraft or ship, Article 87 is violated." *Graham*, 16 M.J. at 464. However, Article 87 "would not necessarily apply in the situation where the serviceperson is merely given a commercial transportation request and told to report at some time in the future." *Id.* Even issu-

---

4920 (1964) (per curiam) (holding board of review erred by not considering unsworn letters in pending appeal of guilty plea conviction). Subsequent cases appear to support the opposite proposition. *See United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980) (although not at issue, stating that evidence outside the record should not be considered in determining whether plea is provident); *United States v. Roane*, 43 M.J. 93, 99 (C.A.A.F.1995) (same); *United States v. Peele*, 46 M.J. 866, 868 (Army Ct.Crim.App. 1997) (same).

8. *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002) (emphasis in original).

9. This language was added to the *MCM* in 1984. *Compare MCM*, 1969 (Rev. ed.), *and* C1–8, *with MCM*, 1984, *as amended by* EO 12484, 49 Fed. Reg. 28825 (July 13, 1984). It superceded earli-

er case law that, in large part, limited Article 87 offenses to situations involving service members who missed movement with their military *units*. *See, e.g., United States v. Gillchrest*, 50 C.M.R. 832, 835, 1975 WL 15761 (A.F.C.M.R.1975); *United States v. Burke*, 6 C.M.R. 588, 592, 1952 WL 2430 (A.F.B.R.1952); *United States v. Pender*, 5 C.M.R. 741, 743, 1952 WL 2236 (A.F.B.R. 1952); *United States v. Jackson*, 5 C.M.R. 429, 431, 1952 WL 2174 (A.F.B.R.1952). *But see United States v. Johnson*, 3 U.S.C.M.A. 174, 177–78, 11 C.M.R. 174, 177–78, 1953 WL 1999 (1953); *United States v. Monod De Froideville*, 9 M.J. 854 (A.F.C.M.R.1980) (per curiam); *United States v. St. Ann*, 6 M.J. 563, 564 (N.C.M.R.1978). The explanatory language was added to reflect our superior court's expanded interpretation of the Congressional intent and legislative history of Article 87, as reflected in *United States v. Graham*, 16 M.J. 460 (C.M.A.1983). *See MCM*, 1984, app. 21, Analysis, at A21–88, para. 11.

ance of a commercial ticket with written orders to report for a commercial flight may not be sufficient to establish that appellant is required in the course of duty to move with a particular aircraft. *See United States v. Gibson,* 17 M.J. 143, 144 (C.M.A.1984).

## C. Discussion

### Foreseeable Disruption

■ The government contends that when appellant missed his PCS flight, his conduct "more likely" resulted in a foreseeable disruption to operations "than in *Gibson.*" The government's argument causes us to examine whether missing movement requires a foreseeable disruption to military operations.

In 1984, the Court of Military Appeals in *Gibson* alluded to a requirement of "foreseeable disruption" to military operations in a missing movement case, stating:

> [T]he accused, having returned from an unauthorized absence, was given a ticket and orders to report for a commercial flight ... [but] the Navy would have been satisfied had the accused caught any flight ... return[ing] him ... on that day.... "[F]oreseeable disruption" to naval operations caused by his failure to make the particular flight [was] not of such magnitude as to require the more severe punishment afforded by the application of Article 87.

17 M.J. at 144.

In 1987, our court explained *Gibson's* reference to foreseeable disruption, stating:

> Whether the movement in question was urgent or whether the accused has been assigned some essential mission is [a] matter that relates to the foreseeable disruption to the service and so is properly [a] matter in mitigation or aggravation, and not a circumstance that changes the actual commission of the offense.

*United States v. Blair,* 24 M.J. 879, 880 (A.C.M.R.1987) (citing *Graham,* 16 M.J. at 464), *aff'd,* 27 M.J. 438 (C.M.A.1988) (summary disposition). In *Blair,* we held that an accused could be convicted of missing movement, as follows:

> [W]hen an individual is ordered to move to or *from an overseas assignment on per-*manent *change of station aboard a specific aircraft,* military, chartered, or commercial, and through design or neglect misses that aircraft, Article 87 is violated.... [There is] no meaningful distinction between "chartered" and "commercial" flights ... the gravamen of the offense [is] the failure to make a specific ordered flight.

*Id.* (emphasis added). In its summary disposition, the Court of Military Appeals stated that Private First Class Blair's "deliberate conduct" that resulted in an inability to travel on his assigned flight violated the "plain meaning" of Article 87. *Blair,* 27 M.J. at 438; *see also Monod De Froideville,* 9 M.J. at 854 (upholding conviction for missing movement where appellant twice, through design, missed his assigned flight aboard a military chartered aircraft for a PCS move to Korea), *cited in United States v. Stroud,* 27 M.J. 765, 769 (A.F.C.M.R.1988). Today, we clarify and reaffirm *Blair's* holding in light of current case law.

Subsequent to the *Blair* decision, our superior court concluded in a contested case that one is not guilty of missing movement if he is " 'required in the course of duty to move' " with an aircraft and is issued a commercial ticket that he could "exchange or cancel ... by dealing directly with the airline, *without approval or intervention by any military official,*" even when moving to an overseas assignment. *Kapple,* 40 M.J. at 473 (emphasis added) (citation omitted). Airman Kapple's flight was scheduled five days before his "not later than" reporting date and he was given a refundable ticket. *Id.* at 472–73. The *Kapple* Court remarked that if the ticket was not used, the government "would not [have been] charged for the ticket, and the seat would [have been] available to any other commercial passenger." *Id.* at 473. The court also indicated there was no evidence regarding "any impact on military operations if [Airman Kapple] had taken an earlier flight or used alternate means of travel to arrive at his new duty station on time." *Id.* Accordingly, the court held the government failed to prove that Airman Kapple "was required to move with a *specific* ship, aircraft, or unit." *Id.* at 473–74 (emphasis added).

Article 87 does not specify a particular type of movement (unit deployment, PCS), but instead focuses on the "failure to make a *specific* ordered flight." *Blair,* 24 M.J. at 880 (emphasis added); *see MCM,* 2002, Part IV, para. 11c(2)(a). Moreover, a "foreseeable disruption" to military operations is not a *required* element of Article 87 based upon the plain language of the code [10]—we decline to hold otherwise.[11]

### Providence of Plea

■ That said, based on the stipulation of fact and appellant's admissions during the providence inquiry, we find that appellant was provident to missing movement on 16 January and 27 January 2002. On those dates, according to trial defense counsel's post-trial affidavit, appellant "was not authorized to change the flights without permission of his command." We find that his command's orders to be on the 16 and 27 January 2002 flights precluded appellant from *dealing directly* with the airline or travel agency to depart on a different flight *without approval of or intervention by a military official. Cf. Kapple,* 40 M.J. at 473–74 (holding missing movement not proven where "no evidence" presented requiring travel aboard specific aircraft).

■ Concerning the 16 December 2001 departure (Specification 3 of Charge II), appellant was required pursuant to his military orders to board the specific flight on the date alleged. Appellant admitted during the providence inquiry that he had an obligation to depart on that flight, did not attempt to

reschedule, and missed the flight through neglect. Although the military judge read the standard definition of neglect from the Military Judges' Benchbook,[12] she did not explain to appellant how the Benchbook definition applied to the particular facts of his case. Appellant explained that he was negligent because he "didn't make it in time to clear housing, so they were unable to sign off on [his] clearing papers." Thereafter, instead of asking appellant to explain the details regarding his failure to clear post, the military judge asked appellant if he was negligent by not changing the flight—appellant responded affirmatively. This is inconsistent with trial defense counsel's post-trial affidavit stating that appellant was *not authorized* to change his own flight.

This conflict raises a substantial basis in law and fact for questioning appellant's guilty plea. *See Prater,* 32 M.J. at 436. We are not satisfied that appellant's trial defense counsel informed the military judge of all the relevant facts. In any case, the military judge did not elicit factual admissions from appellant to fulfill the *MCM* description of neglect, as follows: (1) that appellant failed to take appropriate measures to clear post (as opposed to changing his flight) to "assure [his] presence . . . at the time of a scheduled movement"; or (2) that appellant acted "without giving attention to [the] probable consequences [of his actions] in connection with the prospective movement." *MCM,* 2002, at Part IV, para. 11c(4). Accordingly, we will set aside Specification 3 of Charge II as improvident in our decretal paragraph.[13]

10. As our superior court has stated regarding statutory construction: "If the statute is clear and unambiguous, a court may not look beyond it but must give effect to its plain meaning, unless to do so would produce, absurd results, or bring about a result completely at variance, with the statutory purpose." *United States v. McGowan,* 41 M.J. 406, 413 n. 4 (C.A.A.F.1995) (internal quotation marks and citation omitted).

11. *See* UCMJ art. 87; *MCM,* 2002, Part IV, para. 11b; *Stroud,* 27 M.J. at 770. *But see United States v. Ray,* 37 M.J. 1052, 1054 (N.M.C.M.R. 1993) (stating *Gibson* requires "some nexus between the missing of the flight and the 'foreseeable disruption' to [military] operations caused by an accused's missing a particular flight so as to warrant the more severe punishment provided under Article 87" (citation omitted)).

12. Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 3–11–1d, Note 2 (1 Apr. 2001).

13. We decline to find appellant guilty of failure to go to his appointed place of duty in violation of Article 86, UCMJ. *See United States v. Smith,* 2 M.J. 566, 569 (A.C.M.R.1976) (stating that unauthorized absence is necessarily a lesser-included offense of missing movement) (citing *United States v. Posnick,* 8 U.S.C.M.A. 201, 24 C.M.R. 11, 1957 WL 4687 (1957)). It is not clear from the evidence whether appellant's place of duty on 16 December 2001 was at his quarters preparing for inspection, or at the housing office clearing, or to be aboard his scheduled flight to Korea. *See United States v. Jones,* 1986 CMR LEXIS 2382, \*2 (A.F.C.M.R.1986) (per curiam) ("A criminal prosecution for failing to report to a

## II. DRUNK ON DUTY

### A. Facts

■ Appellant pleaded guilty to, and was found guilty of, drunk on duty for allegedly attending a job fair while intoxicated. During the Care[14] inquiry, appellant stated as follows:

I was supposed to be—my place of duty was at the job fair. *I didn't go to the job fair* and I had a couple of beers at a friend's house.

... I was found drunk on duty after I came back to make final formation and the sergeant that was in charge of us, he smelled alcohol on my breath and he noticed that I had a slurred speech, so he took me over to the MP [military police] station ....

(Emphasis added.)

Appellant later added that he "was supposed to be attending a job fair" with another soldier because appellant was "ACAP-ing"[15] and "Sergeant First Class [SFC] Hill said go there, that's your appointed place of duty." When the military judge asked what happened next, appellant responded as follows:

We went there [to the job fair] about 1130 we left for lunch and we went to a friend of ours' house and he had a couple of beers and he asked if we wanted one and we each said[,] 'Yeah,' since we were in civilian clothes and we didn't think we were going to make it back in time for formation, so we started drinking.

....

... then when we got back to Carson it was still—formation hadn't happened yet, so we went up to the [company headquarters] where [SFC] Hill confronted me about if I had been drinking cause he smelled alcohol on my breath, and he said that I had slurred speech. And at that

place of duty cannot be based upon the accused's election to obey one of two conflicting orders when simultaneous compliance with both is impossible.") (citing *United States v. Patton,* 41 C.M.R. 572, 1969 WL 6381 (A.C.M.R.1969)).

14. *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969).

time I told him yes, and then he took me over to the MP station ....

The stipulation of fact states that appellant "was supposed to be working at a job fair but could not be found.... Based on [appellant's] behavior SFC Hill took [appellant] to the MP station at 1600 [on 24 April 2002] .... [T]he accused was found drunk on duty." Appellant admitted to the military judge during the providence inquiry that he drank beer in the "middle of the day, around lunchtime," that he drank while on duty, and that he believed he was drunk while on duty.

It is unclear from the record of trial as a whole whether appellant was ever at the job fair or "on duty" while intoxicated. Appellant told the military judge, "I didn't go to the job fair." Later he said, "We went there." The stipulation of fact says appellant "could not be found" at the job fair.

Appellate defense counsel argue that appellant's plea was improvident because during the providence inquiry the military judge failed to establish that appellant was "actually at his place of duty." The government disagrees.

### B. Discussion

The requirements of a *Care* inquiry and Article 45(a), UCMJ, were not met for additional Charge I and its Specification. Appellant's ambiguous responses to the military judge's questions and the stipulation of fact set up matters inconsistent with his guilty plea[16] and fail to establish whether appellant was drunk on duty. *See MCM,* 2002, Part IV, para. 36c(2)–(3) (indicating that a service member who does not enter upon or start duty at all cannot be drunk "on duty"); *United States v. Dixon,* 2 C.M.R. 823, 824–25, 1952 WL 1813 (A.F.B.R.1952). The military judge failed to ensure that an adequate factual predicate existed for appellant's guilty plea to drunk on duty because she did not elicit "'factual circumstances as revealed by the accused himself [that] objectively support[ed]

15. "ACAP" is the Army Career and Alumni Program, which is designed to assist soldiers and others in a successful transition from federal service.

16. *See Davenport,* 9 M.J. at 367.

that plea[.]'" *Jordan*, 57 M.J. at 238 (some alteration in original) (quoting *Davenport*, 9 M.J. at 367). As such, the military judge abused her discretion in accepting appellant's guilty plea to the offense of drunk on duty. *See Eberle*, 44 M.J. at 375; *United States v. Hoskins*, 29 M.J. 402, 405 (C.M.A.1990). We hold that the record of trial raises a substantial, unresolved question of law and fact as to the providence of appellant's guilty plea to a violation of Article 112, UCMJ. *See Jordan*, 57 M.J. at 238; *Prater*, 32 M.J. at 436.

We must now consider whether appellant's responses to the military judge during the plea inquiry establish any other basis for criminal liability. We conclude that they do.

■ If an accused at the providence inquiry clearly admits guilt to a "different but closely-related offense" with the same or a lesser maximum punishment as that of the charged offense, the accused's guilty plea is provident. *See United States v. Epps*, 25 M.J. 319, 322–23 (C.M.A.1987); *United States v. Rhodes*, 47 M.J. 790, 793 (Army Ct.Crim.App.1998). Incapacitation for duty by reason of drunkenness is closely related to the charged offense (drunk on duty) and conforms to the pleadings and appellant's admissions.[17]

■ We find that on 24 April 2002, appellant was drunk or intoxicated.[18] During the providence inquiry, appellant admitted that he was "drunk" on this date, consistent with the military judge's definition of "drunk." We also find that appellant was incapacitated and unable to perform his duties as a result of previous alcohol consumption.[19] The 24th of April was a duty day and appellant's condition was evident from his slurred speech, as admitted by appellant during the providence inquiry and reflected in the stipulation of fact. Appellant's description during the providence inquiry of his conduct on 24 April 2002 satisfies the elements and definitions for the Article 134 offense of incapacitation for duty by reason of drunkenness.[20] Therefore, we will modify Additional Charge I and its Specification to conform to the facts admitted by appellant during the providence inquiry.

### III. CONCLUSION

We have reviewed the matters personally raised by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The finding of guilty of Specification 3 of Charge II is set aside and Specification 3 of Charge II is dismissed. The court affirms only so much of the findings of guilty of Additional Charge I and its Specification as finds that appellant was, at or near Fort Carson, Colorado, on or about 24 April 2002, as a result of wrongful previous overindulgence in intoxicating liquor, incapacitated for

---

17. *See Hoskins*, 29 M.J. at 405 (reducing guilty plea from drunk on duty to incapacitation for duty through drunkenness where appellant reported for duty while drunk but never entered upon duty); *compare MCM*, 2002, Part IV, para. 36e (providing that maximum punishment for drunk on duty includes a bad-conduct discharge, nine months of confinement, and total forfeitures), *with id.* at Part IV, para. 76e (providing that maximum punishment for incapacitation for duty includes no discharge, confinement for three months, and partial forfeitures).

18. For the purpose of both Articles 112 and 134, UCMJ, "drunk" means any alcohol intoxication "sufficient to impair the rational and full exercise of the mental or physical faculties." *MCM*, 2002, Part IV, para. 35c(6). The military judge explained the term, "drunk," to appellant by using the pattern instructions in the Benchbook, which mirror the *MCM* definition. *Compare* Benchbook, para. 3–36–1d, *with MCM*, 2002, Part IV, para. 35c(6).

19. Part IV, paragraph 76c(2), of the *MCM*, 2002, defines "incapacitation" as "unfit or unable to perform properly. A person is 'unfit' to perform duties if at the time the duties are to commence, the person is drunk...." We also note that Army Reg. 600–85, Personnel—General: Army Substance Abuse Program, para. 1–34b (1 Oct. 2001), explains: "Military personnel on duty will not have a blood alcohol level equal to or greater than .05 .... To be in violation of this provision, a soldier should reasonably have known prior to becoming impaired that he/she had official military duties to perform."

20. The military judge explained the phrase, "prejudicial to good order and discipline," while discussing another charge with appellant during the providence inquiry, but she did not discuss this phrase within the scope of the drunk on duty offense. It is not necessary, however, for the military judge to specifically advise appellant that his conduct was prejudicial to good order and discipline. *See Epps*, 25 M.J. at 323 n. 4.

the proper performance of his duties, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The remaining findings of guilty are affirmed.

Reassessing the sentence on the basis of the errors noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for six months, and reduction to Private E1.

Senior Judge HARVEY and Senior Judge MERCK concur.