# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
NEVIN, OLMSCHEID, and KIRBY
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant SCOTT K. STOKES**
**United States Army, Appellant**

ARMY 20041348

Defense Language Institute Foreign Language Center and Presidio of Monterey
Robert Smith, Military Judge
Colonel John L. Clifton, Staff Judge Advocate

For Appellant: Colonel John T. Phelps II, JA; Lieutenant Colonel Kirsten V.C. Brunson, JA; Captain Charles L. Pritchard, Jr., JA; (on brief); Lieutenant Colonel Steven C. Henricks, JA; Major Tyesha E. Lowery, JA; Captain Sean F. Mangan, JA (on specified issue brief).

For Appellee: Colonel John W. Miller II, JA; Lieutenant Colonel Michele B. Shields, JA; Major Paul T. Cygnarowicz, JA; Captain Trevor B.A. Nelson, JA (on brief); Lieutenant Colonel Kevin Boyle, JA; Major Paul T. Cygnarowicz, JA; Captain Trevor B.A. Nelson, JA (on specified issue brief).

11 June 2007

---------------------------------
OPINION OF THE COURT
---------------------------------

NEVIN, Chief Judge:[1]

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of absence without leave, wrongful appropriation of private property valued at over $500.00, larceny of private property valued at over $500.00, larceny of military property valued at over $500.00, and forgery, in violation of Articles 86, 121, and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 921, and 923 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for eight months, and reduction to Private E1, and deferred automatic forfeiture of pay until action.

---

[1] Chief Judge Nevin took final action while on active duty.

STOKES – ARMY 20041348

We have considered the record of trial, appellant's assignments of error, the matter appellant personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant's brief on the specified issue and the government's responses thereto. We agree with appellant's second assignment of error, that he was not properly credited with two days of confinement credit awarded by the military judge for time spent in pretrial civilian confinement and will credit appellant's sentence accordingly.[2] We find the remaining errors asserted by appellant, however, to be without merit and write this opinion to clarify the scope of our review on appeal.

For the reasons stated below, we find that we must limit our review of the providence of appellant's pleas to the evidence admitted *at trial*. We reject, therefore, appellant's assertions and the government's concession, based upon information outside the record of trial, that appellant was not provident to his plea of guilty to Specification 3 of Charge II (larceny of military property). Furthermore, although not raised by appellant, we are left with the conclusion that defense counsel misadvised appellant to plead guilty to larceny of military property by misusing his government travel card where the relevant contracts establish that the military would not have been held liable for appellant's misuse. However, we find this did not constitute ineffective assistance of counsel because, in context, the erroneous advice did not materially prejudice appellant.

Moreover, we reject appellant's assertion that even if we limit our review to the record developed at trial, there is a substantial basis to question appellant's plea of guilty to larceny of military property. We also reject the government's assertion that appellant's explanation to the military judge that the property in question was military property (because "once the charge was on the card and [he] wasn't going to pay it back . . . the government would be responsible to pay [its] credit card back") was a *legal* conclusion insufficient to provide the requisite factual basis to support his plea.[3]

---

[2] Although awarded by the military judge after sentencing, the convening authority's initial action failed to include this credit. *See* Rule for Courts-Martial 1107(f)(4)(F); Army Reg. 27-10, Legal Services: Military Justice, para. 5-28a (16 Nov. 2005) (requiring a convening authority to "show in [the] initial action all credits against a sentence to confinement . . . regardless of the source of the credit . . . or for any . . . reason specified by the judge"); *United States v. Delvalle*, 55 M.J. 648, 649 n.1, 656 (Army Ct. Crim. App. 2001); *United States v. Arab*, 55 M.J. 508, 510 n.2, 520 (Army Ct. Crim. App. 2001).

[3] Appellant did not simply tell the military judge that the property in question was military property because the government was liable for his purchases. Had this been the extent of the military judge's inquiry, we would be inclined to agree with

2

## FACTS AND PROCEDURAL BACKGROUND

Appellant, a chaplains' assistant at the Presidio of Monterey, served as the custodian of the chaplains' fund. Over a period of several months he stole over $7,500.00 from the chaplains' fund by writing checks to himself and forging signatures of those with the requisite approval authority, and by stealing cash offerings. Also, over a period of several months he wrongfully used his government travel card to steal over $1,600.00. Following commission of these offenses, appellant went absent without leave (AWOL) for approximately five months. To facilitate his flight from his Army unit, he wrongfully appropriated the privately owned vehicle of another soldier.

Appellant alleges on appeal, *inter alia*, that his plea of guilty to Specification 3 of Charge II (larceny of military property by improperly using his government travel card) was improvident because, contrary to his testimony during the *Care* inquiry,[4] the property was not, in fact, military property because the government was not liable for appellant's charges to his government travel card.

Appellant submitted portions of the *Bank of America Department of Defense Visa Travel Card Program Card Holder Program Guide* and *Department of Defense Financial Management Regulation* as attachments to his appellate brief to support his assertion that the property was not military property. This evidence was not introduced at trial, although available at the time. Moreover, the evidence was not determinative as to whether the property in question was military property, as there was no evidence presented either at trial or in the appellate briefs indicating that the policies contained in these documents were ever incorporated into the relevant contracts at the time of the offenses. Neither appellant nor the government

---

the government. Liability is a legal concept, the implications of which we would not assume that a lay person fully appreciated. *See United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003) ("Although [a]ppellant is not entitled to receive a hornbook review of the [complex inchoate offense of attempt], the record must objectively reflect that [a]ppellant understood that his conduct, in order to be criminal, needed to go beyond preparatory steps and be a direct movement toward the commission of the intended offense."). Appellant need not have a law school education, however, to appreciate the meaning of his own assertion that "once the charge was on the card and [he] wasn't going to pay it back . . . the government would be responsible to pay [its] credit card back." *See United States v. Morris,* 58 M.J. 739, 742 (Army Ct. Crim. App. 2003), *pet. denied* 59 M.J. 146 (C.A.A.F. 2003). This assertion is not a legal conclusion as to liability; rather it is an assertion of the underlying facts needed to make that conclusion.

[4] *United States v. Care*, 18 C.M.A. 535, 541, 40 C.M.R. 247 (1969).

submitted for this court's consideration the evidence that is determinative on the issue — the contracts between appellant and Bank of America[5] and between the Department of Defense and Bank of America[6] in effect at the time of the offenses.

During the providence inquiry, appellant admitted, under oath, that the property in question *was* military property because "once the charge was on the card and [he] wasn't going to pay it back . . . the government would be responsible to pay [its] credit card back."  As a consequence, following a Rule for Courts-Martial [hereinafter R.C.M.] 802 conference with counsel, the military judge, without objection from appellant or the government, determined on the record that the credit card obligations were, in fact, military property.

The government, citing to the same two documents as appellant, conceded in its appellate brief that the government would *not* have been liable for appellant's charges to his government travel card and, therefore, the property was not military property.  The government urged this court to amend Specification 3 of Charge II to substitute the words "Bank of America property" for the words "military property."

After our initial review of the case under Article 66(c), UCMJ, we ordered counsel to submit briefs on the following specified issue:

> WHETHER THE COURT HAS THE AUTHORITY UNDER ARTICLE 66(c), UNIFORM CODE OF MILITARY JUSTICE, TO USE EVIDENCE AVAILABLE, BUT NOT OFFERED OR ADMITTED, AT THE TIME OF TRIAL, IN EVALUATING THE PROVIDENCE OF A GUILTY PLEA.  *See United States v. Russel*, 50 M.J. 99 (C.A.A.F. 1999); *United States v. Boone*, 49 M.J. 187 (C.A.A.F. 1998);  *United States v. Mason,* 45 M.J. 483 (C.A.A.F. 1997); *United States v. Parker*, 36 M.J. 269 (C.M.A. 1993).

Furthermore, for the sole purpose of properly analyzing the potential collateral issue of ineffective assistance of counsel, we ordered government appellate counsel to file the contract in effect at the time of the alleged offenses between the Department of Defense and Bank of America.

---

[5] Bank of America was the issuer of the credit card used in the larcenies.

[6] This contract would have explained the extent of the government's liability for failure of Department of Defense cardholders to pay their credit card debts.

## DISCUSSION

## I. Scope of Review on Appeal

*Law*

### Non-collateral Issues

Under Article 66(c), UCMJ, this court is charged with:

> affirm[ing] only such findings of guilty and the sentence
> or such part or amount of the sentence, as it finds correct
> in law and fact and determines, *on the basis of the entire*
> *record*, should be approved. *In considering the record*,
> [we] may weigh the evidence, judge the credibility of
> witnesses, and determine controverted questions of fact,
> recognizing that the trial court saw and heard the
> witnesses.

(Emphasis added.) Our superior court has characterized our authority under Article 66(c), UCMJ, as an "awesome, plenary, *de novo* power of review" and described the service courts as "something like the proverbial 800-pound gorilla when it comes to their ability to protect an accused." *United States v. Parker*, 36 M.J. 269, 271 (C.M.A. 1993). As Judge Wiss noted in his concurring opinion, however:

> Even a court with "awesome, plenary, *de novo* power of
> review" and with "*carte blanche* to do justice" is not
> unrestricted. No court is free to act beyond the perimeter
> of its legal mandate, whether acting on behalf of an
> individual accused or on behalf of the people through the
> prosecution. There are *some* places where even "the
> proverbial 800-pound gorilla" is not free to roam.

*Id*. at 273 (Wiss, J., concurring) (citing *United States v. Bethea*, 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973)). In *Bethea*, our superior court clearly articulated that Article 66(c), UCMJ, limits our authority, in regard to the findings,[7] to the record as

---

[7] Government counsel, in their brief on the specified issue, erroneously rely on our superior court's admonition in *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988), that we are to assure that "justice is done" as authority for us to consider additional matters on appeal. That reliance, however, is misplaced. *Healy* specifically limited itself to the issue of whether a service court erred in refusing to consider letters, primarily written by prison officials after trial, recommending

developed *at trial*. For, "[u]ndeniably, evidence not presented at the trial cannot be used to support or reverse a conviction . . . ." *Bethea*, 22 U.S.C.M.A. at 225, 46 C.M.R. at 225 (quoting *United States v. Lanford*, 6 U.S.C.M.A. 371, 379, 20 C.M.R. 87, 95 (1955)); *see also* Fed. R. App. P.10 (The record of trial on appeal consists of "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk."). This principle has been reiterated in a long line of cases and, as evidenced by our superior court's decision this term in *United States v. Beatty*, 64 M.J. 456 (C.A.A.F. 2007), remains in full force today.[8] The *Beatty* Court stated, "In

---

reduction in the length of confinement. It answered this question in the negative and affirmed the service court's decision. Moreover, *Healy* held:

> We infer . . . that Congress never intended that a [service court] would be under any duty to receive additional information on sentencing after the convening authority had acted. . . .
>
> . . .The point is that the [service court] has no duty to receive information or data that purports to be relevant only to clemency and that, after the convening authority has acted, the Code provides no way of bringing to the attention of the [service court] information that purportedly bears *even on sentence appropriateness*."

*Id*. at 396-97 (emphasis added).

[8] *See also United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006) (holding a service court "is constrained by the bounds of the record from the court below when reviewing an appellant's guilt or innocence for factual or legal sufficiency."); *United States v. Holt*, 58 M.J. 227, 232 (C.A.A.F. 2003) ("Article 66(c)[, UCMJ,] limits the [service courts] 'to a review of the facts, testimony, and evidence presented at trial, and precludes a [service court] from considering 'extra-record' matters when making determinations of guilt, innocence, and sentence appropriateness.'" (quoting *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)); *United States v. Scheurer*, 62 M.J. 100, 108 (C.A.A.F. 2005) (reciting its holding in *Holt*, 58 M.J. at 232-33, that "a court of criminal appeals 'may not resurrect excluded evidence' or consider evidence in a manner inconsistent with the limited purpose for which the military judge admitted it."); *United States v. Reed*, 54 M.J. 37, 43 (C.A.A.F. 2000) (upholding a service court's decision refusing to consider information from an Article 32, UCMJ, in evaluating guilt); *United States v. Boone*, 49 M.J. 187, 193 (C.A.A.F. 1998) ("[T]he service appellate court has 'factfinding power on collateral claims' but . . . it is not authorized 'to determine innocence on the basis not

a succession of early cases, we established that the review of *findings* — of guilt or innocence — was limited to the evidence presented at trial." *Id*. at 458 (citing *Holt*, 58 M.J. at 232; *Bethea*, 22 U.S.C.M.A. at 224-25, 46 C.M.R. at 224-25; *Lanford*, 6 U.S.C.M.A. at 379, 20 C.M.R. at 95; *United States v. Duffy*, 3 U.S.C.M.A. 20, 23, 11 C.M.R. 20, 23 (1953); *United States v. Whitman*, 3 U.S.C.M.A. 179, 180, 11 C.M.R. 179, 180 (1953).

Furthermore, if there was any doubt that the principle of limiting review to the record developed at trial applied only to contested cases, our superior court dispelled that notion long ago in its decision in *United States v. Davenport*, 9 M.J. 364 (C.M.A. 1980); *see also United States v. Roane*, 43 M.J. 93, 99 (C.A.A.F. 1995); *United State v. Peele*, 46 M.J. 866, 868 (Army Ct. Crim. App. 1997). "[E]vidence from outside the record will not be considered by appellate authorities to determine anew the providence of the plea. . . . [P]rovidence of a tendered plea of guilty is a matter to be established one way or the other at trial." *Id.* at 367.

## Collateral Issues

This court's reviewing authority with respect to collateral issues, such as post-trial confinement, prosecutorial misconduct, unlawful command influence, or ineffective assistance of counsel permits, however, a more expansive definition of "the entire record" than that permitted during our review of non-collateral issues.[9] Consideration of collateral issues requires us to include within the meaning of "the entire record" additional materials that may be submitted with appellate pleadings, attached to allied documents, or derived from other sources. This is so because, by their very nature, collateral issues deal with matters that may not be readily apparent

---

presented at trial.'") (quoting *United State v. Ginn*, 47 M.J. 236, 242 (C.A.A.F. 1997)).

[9] We note that our review of petitions for new trial also requires a more expanded view of what is included in the "entire record." Rule for Courts-Martial 1210(f) allows for a new trial when there is new evidence discovered after trial, which would not have been discovered through the exercise of due diligence prior to trial and which would probably produce a substantially better result for the accused. *See also United States v. Garcia*, 19 F.3d 1123, 1126 (6th Cir. 1994); *United States v. Wilson*, 894 F.2d 1245, 1252 (11th Cir. 1990); *United States v. Meyers*, 484 F.2d 113, 116 (3d Cir. 1974). Petitions for new trial will not be granted, however, on the basis of newly discovered evidence "when the petitioner was found guilty of the relevant offense pursuant to a guilty plea." R.C.M. 1210(a). As appellant pled guilty to larceny of military property, R.C.M. 1210(a) precludes him from submitting a petition for new trial based on newly discovered evidence.

at trial and, therefore, might not have been reasonably developed at trial. *See United States v. Boone, supra*; *United States v. Ginn, supra; see also United States v. Bright*, 60 M.J. 936, 939 (Army Ct. Crim. App. 2005) (once appellant asserts post-trial cruel and unusual punishment, the "entire record" includes those matters contained in his appellate pleadings). A more expansive review of collateral matters does not, however, equate to an expansion of our authority under Article 66(c), UCMJ and does not permit us to augment the record of trial in our evaluation of the providence of an appellant's pleas.

This principle was demonstrated in *United States v. Gonzalez*, 60 M.J. 572, 574-75 (Army Ct. Crim. App. 2004). In *Gonzalez*, we considered materials contained in allied papers attached to the transcript of proceedings, but not admitted into evidence, to determine the collateral issue of whether the appellant in that case received effective assistance of counsel.[10]

*Analysis*

Appellant now seeks to use evidence, which at the very least was available to him at trial — had he exercised the due diligence necessary to obtain it — to directly attack the factual basis of his plea of guilty to larceny of military property. If appellant wished to challenge the government's liability for the charges incurred through his misuse of his government travel card, the time to do so was at trial. Appellant did not do so, but instead conceded the matter at trial during the providence inquiry.

We see no justification to "allow appellant to throw a penalty flag and prevail after he has admitted on the record to each element of the charged offenses . . . ." *United States v. Russell*, 50 M.J. 99, 100 (C.A.A.F. 1999). As a result, we will follow our superior Court's guidance in *Davenport* and confine our evaluation of

---

[10] In *Gonzalez*, after examining the allied papers to resolve the collateral issue of effectiveness of counsel, we determined, as with our determination in the case *sub judice*, that appellant's trial defense counsel had not informed the military judge of all the relevant facts and thus advised his client to plead guilty based upon an inaccurate factual predicate. In *Gonzalez*, we found the appellant improvident to missing movement because the military judge "failed to elicit from appellant factual admissions [on the record, i.e. during providence] to support a finding that appellant was neglectful in missing his scheduled flight." *Gonzalez* at 573. *See also United States v. Harding*, 61 M.J. 526 (Army Ct. Crim. App. 2005) (government cannot use sentencing testimony to support the providence of a guilty plea). In contrast, as discussed below, in the case *sub judice*, the military judge did elicit sufficient factual admissions to support a finding of guilty.

appellant's guilty pleas to the evidence contained in the "entire record" consisting of the record of trial proceeding and exhibits. Doing so promotes judicial economy and brings finality to the appellate process. It also ensures that, except for those rare circumstances when truly new evidence comes to light, an appellant is not permitted to use the benefit of hindsight to undermine tactical decisions reasonably made at trial.[11]

While affirming a guilty plea based upon an objectively false factual predicate may appear facially unfair, an accused's right to fundamental due process is nevertheless preserved. For example, where an accused is deprived of effective assistance of counsel, he is not necessarily without remedy. In a sufficiently aggravated case, he might merit appellate relief, not because the "erroneous" plea was improvident, but because the case amounted to a miscarriage of justice so grave as to deny him the basic right to counsel guaranteed by the Sixth Amendment. In such a case, this court would not be without authority to set aside a conviction on the basis of the collateral issue of ineffective assistance of counsel. It is this issue, not directly raised by appellant, but implicated nonetheless, to which we now turn.

## II. Ineffective Assistance of Counsel

*Law*

We review de novo issues of ineffective assistance of counsel under the two-pronged analysis set forth in *United States v. Strickland*, 466 U.S. 668, 689 (1984), which is:

---

[11] Had we considered the actual contracts in this case in determining the factual sufficiency of the appellant's pleas of guilty, we would have accepted the government's concession that, pursuant to the terms of the contracts, the government would not be liable for appellant's charges. As a result, we would have found appellant's plea to larceny of military property improvident and substituted the words "Bank of America property" for the words "military property" in Specification 3 of Charge II. *See generally United States v. Epps*, 25 M.J. 319, 323 (C.M.A. 1987) (holding that we may "uphold a conviction when the providence inquiry clearly establishes guilt of an offense different from but closely related to the crime to which the accused has pleaded guilty."). For the reasons discussed in our analysis of counsel's performance, we do not believe that the nature of the property in Specification 3 of Charge II had any impact on appellant's sentence or that appellant suffered any prejudice. Reassessing the sentence applying the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986), we would have affirmed the sentence.

> (1) a deficiency in counsel's performance that is so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense through errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006) (internal quotations and citations omitted).  Thus, not only must we find defense counsel's performance "unreasonable under the prevailing professional norms," but we must also find, but for his performance, the results of appellant's court-martial would have been different.  *Id.*

*Analysis*

Under the first prong of the *Strickland* analysis, we find the defense counsel fell below the standard of a reasonable attorney.  Ordinarily defense counsel are "presumed to be competent" and to have "conducted reasonable investigations into the existence of defenses."  *United States v. Shaw*, 64 M.J. 460**,** 463 (C.A.A.F. 2007).  The facts in this case, however, point to the contrary.  Either defense counsel failed to research the issue of government liability under the existing contract between the Department of Defense and Bank of America or he allowed his client to plead guilty to larceny of military property, under the theory that the government would ultimately be liable for his client's misuse of the government travel card, knowing this information, given under oath, to be untrue.  Neither of these options provides a valid tactical reason for advising his client to plead guilty.  *See generally United States v. Dobrava*, 64 M.J. 503 (Army Ct. Crim. App. 2006) (discussing the limitations on tactical decisions).

Under the second prong of the *Strickland* analysis, however, we do not find prejudice.  Appellant was convicted of *several* offenses to include stealing over $7,500.00 from the chaplains' fund, stealing over $1,600.00 using his government travel card, forgery, and wrongfully appropriating another soldier's vehicle to aid him in going AWOL for approximately five months.  The error in this case went to the identity of the victim in one specification and did not go to whether appellant, in fact, committed larceny or to the amount stolen.  In other words, the gravemen of the offense retained its essential character.

Moreover, appellant entered into a very favorable pretrial agreement with the convening authority that limited his maximum punishment to that allowed by a special court-martial, which included twelve months confinement, a bad-counduct discharge, forfeiture of two thirds pay per month for twelve months, and reduction to Private E1.  The military judge, however, only sentenced appellant to a bad-conduct

discharge, eight months confinement and reduction to Private E1.  To conclude that the convening authority would have reduced appellant's sentence or granted other clemency based on the victim in question being Bank of America as opposed to the military defies common sense.  Although the maximum permissible confinement for larceny of military property is twice that of non-military property, it is clear from the pretrial agreement and referral to a special court-martial, as well as from the sentence adjudged and approved, that this difference had no material effect on the outcome of the case.  Appellant was not prejudiced by a mischaracterization of the property.  We determine, therefore, that appellant was not denied effective assistance of counsel.

## CONCLUSION

The findings of guilty and the sentence are affirmed.  To the extent appellant has not already received the confinement credit awarded by the military judge, appellant will be credited with two days of confinement credit.

Senior Judge OLMSCHEID and Judge KIRBY concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court