UNITED STATES

v.

**Airman Andrew J. BROZZO,
United States Air Force.**

ACM 34542.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 23 March 2001.

Decided 24 July 2002.

Appellate Counsel for Appellant: Colonel Beverly B. Knott, Lieutenant Colonel Timothy W. Murphy, and Major Marc A. Jones.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Lance B. Sigmon, Major Jennifer Rider, Major Linette Romer, and Major Adam Oler.

Before YOUNG, BRESLIN, and ROBERTS, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Senior Judge:

A general court-martial comprised of officers and enlisted members convicted the appellant, contrary to his pleas, of the wrongful use of cocaine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The court-martial sentenced the appellant to a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to E–1. The convening authority approved only so much of the sentence as included a bad-conduct discharge, forfeiture of $779.00 pay per month for one month,* and reduction to E–1. On appeal, the appellant asserts the government violated his due process rights by failing to disclose exculpatory evidence before trial. Finding no error, we affirm.

*Facts*

On 21 September 2000, as part of the regular drug testing program, authorities at Seymour Johnson Air Force Base (AFB),

---

* It appears there is an error in the action. The convening authority could not approve total forfeitures because the appellant was not sentenced to confinement. Air Force Instruction (AFI) 51–201, *Administration of Military Justice,* ¶ 9.8.1 (2 Nov 1999). While attempting to approve only two-thirds forfeitures, the convening authority approved only "forfeiture of $779.00 pay per month," without specifying a number of months. This had the effect of approving forfeitures for only one month. *United States v. Lower,* 10 M.J. 263, 264–65 (C.M.A.1981); *United States v. Roman,* 46 C.M.R. 78, 82, 1972 WL 14396 (C.M.A. 1972). Also, the maximum forfeiture for an E–1 was $695.00. There is no indication this prejudiced the appellant.

North Carolina, selected the appellant at random to provide a urine sample for testing. The Air Force Drug Testing Laboratory, Brooks AFB, Texas, tested the appellant's sample, and reported finding the metabolite of cocaine in his urine at a concentration level of 202 nanograms per milliliter (ng/ml), above the 100 ng/ml cut-off established by the Department of Defense. The positive drug test result formed the basis of the present charge. Following a three-day trial, a general court-martial found the appellant guilty of the offense.

The defense alleges prejudicial error in pretrial discovery. The appellant advised this Court that the trial defense counsel submitted a formal discovery request on 3 January 2001 requesting disclosure of documentation relating to "false positives" and "false negatives." The trial defense counsel also requested, inter alia, copies of documents relating to inspections of the laboratory, the quality control program, mishandling of samples, and other administrative errors in testing for the three months before the appellant's sample was tested, the month of the testing, and the month after the testing. The appellant also demonstrated that, during testing at the Brooks AFB laboratory on 31 July 2000, an internal blind quality control sample that should have been negative erroneously tested positive for the metabolite of cocaine. The appellant offered copies of the defense discovery request and the laboratory report of the internal blind quality control sample in question, which this Court accepted for the purpose of considering this issue. *See United States v. Dixon,* 8 M.J. 149, 151 (C.M.A.1979).

The appellant asserts that the internal blind quality control sample was a "false positive," which the government failed to reveal to the trial defense counsel. The appellant maintains the government violated the appellant's due process rights by failing to disclose this "exculpatory evidence." The government's answer does not address whether the blind quality control sample was a "false positive," but contends that it was not so material that the non-disclosure constituted a violation of due process under *Bra-dy v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

To find out what the prosecution provided trial defense counsel, we ordered the government to provide copies of certain documents, including the government's written responses to the defense discovery requests, and documents provided in response to specific defense requests relevant to the internal blind quality control sample at issue. The government provided the responsive letters from the trial counsel and the government counsel for the Brooks AFB laboratory, along with documents listed as attachments to the pertinent paragraphs.

*Law*

The foundation for discovery in courts-martial is Article 46, UCMJ, 10 U.S.C. § 846, which provides: "The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Pursuant to this delegation, the President promulgated Rule for Courts–Martial (R.C.M.) 701 setting out rules for discovery in courts-martial.

R.C.M. 701 requires the trial counsel to provide certain information to the defense, regardless of whether there has been a written request. This includes copies of papers accompanying the charges upon referral, the convening orders, signed statements relating to the offense, the names and addresses of witnesses, records of prior convictions to be offered on the merits, and evidence favorable to the defense. R.C.M. 701(a)(1), (3), (4), and (6).

Certain other discovery obligations of trial counsel are triggered by a defense request for disclosure. R.C.M. 701(a)(2)(A) requires the government to permit the defense, upon request, to inspect "[a]ny books, papers, documents ... or copies of portions thereof, which are within the possession, custody, or control of military authorities, and which are material to the preparation of the defense...." Subsection (B) of that rule provides a right, upon request, for the defense to inspect:

"Any results or reports of … scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of military authorities, the existence of which is known or by the exercise of due diligence may become known to the trial counsel, and which are material to the preparation of the defense. . . ."

R.C.M. 701(a)(2)(B). "The scope of the trial counsel's inquiry, beyond his or her own files, depends upon the nature of the request and the trial counsel's relationship to the holder of the information." *United States v. Figueroa,* 55 M.J. 525, 528 (A.F.Ct.Crim.App. 2001) (citing *United States v. Williams,* 50 M.J. 436, 441 (1999)).

Our superior court has consistently held that the military justice system provides an accused with broader discovery rights than required by the Constitution. *See United States v. Kinney,* 56 M.J. 156 (2001) (interlocutory order); *United States v. Simmons,* 38 M.J. 376, 380 (C.M.A.1993); *United States v. Dancy,* 38 M.J. 1, 5 (C.M.A.1993); *United States v. Green,* 37 M.J. 88, 90 (C.M.A.1993); *United States v. Eshalomi,* 23 M.J. 12, 24 (C.M.A.1986). However, if the government fails to provide evidence required to be disclosed under these rules, the failure will rise to the level of a due process violation only where the matter is "material either to guilt or to punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375. The defense need not show that disclosure of "the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

### Analysis

To determine whether there was a *Brady* violation in this case, we first look to see whether the government failed to disclose required evidence. We note the defense rests its argument upon the assertion that the internal blind quality control sample at issue was a "false positive." The government appears to have accepted this premise and therefore focused upon the defense discovery request regarding false positives and the government's assertion that there were none. It was not a "false positive," however. This specimen was never reported as positive—to the contrary, the problem was noticed upon the first review and the sample was marked "redo," meaning that the analytical data did not meet acceptance criteria. This was instead an internal blind quality control sample that failed due to a handling error.

We find that the government was required to disclose this information upon proper request. The government's primary evidence was the urinalysis test report. Although the internal blind quality control sample in question was not part of the actual test of the appellant's sample, it was sufficiently related by subject and time to be relevant to the validity of the government's testing procedure. *Figueroa,* 55 M.J. at 529. Thus, the government was required to disclose the evidence upon request by defense counsel. R.C.M. 701(a)(2)(B).

We turn to the documentation of the matters provided the defense counsel to see what was furnished in discovery relevant to this matter. As discussed above, the government submitted numerous documents in response to this Court's order. To resolve this issue, we will consider only the letters from the trial counsel and the counsel for the Brooks AFB laboratory along with the certificate of service upon defense counsel, and the Quality Control Branch monthly reports for June, July, August, and September 2000.

■ Federal courts consistently hold that evidence is not suppressed if the defendant knew, or in the exercise of reasonable diligence should have known, of the essential facts that would have permitted him to take advantage of the evidence in question. *See United States v. Clark,* 928 F.2d 733, 738 (6th Cir.1991); *United States v. Wilson,* 901 F.2d 378, 380 (4th Cir.1990); *United States v. Grossman,* 843 F.2d 78, 85 (2d Cir.1988),

*cert. denied,* 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989); *United States v. Davis,* 787 F.2d 1501, 1505 (11th Cir.), *cert. denied sub nom. Lowe v. United States,* 479 U.S. 852, 107 S.Ct. 184, 93 L.Ed.2d 118 (1986); *Lugo v. Munoz,* 682 F.2d 7, 9–10 (1st Cir. 1982); *United States v. Robinson,* 560 F.2d 507, 518 (2d Cir.1977), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); *United States v. Cravero,* 545 F.2d 406, 420 (5th Cir.1976).

> The rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government. *United States v. Ruggiero,* 472 F.2d 599, 604 (2d Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398[ ] (1973).

*United States v. LeRoy,* 687 F.2d 610, 618–19 (2d Cir.1982). Our superior court has also found no *Brady* violation where reasonably diligent defense counsel would have discovered the evidence. *United States v. Lucas,* 5 M.J. 167, 170–71 (C.M.A.1978). *See also Simmons,* 38 M.J. at 385 (Crawford, J., dissenting).

■ The government provided trial defense counsel with copies of the Quality Control Branch monthly report dated 10 August 2000 covering the internal blind quality control (BQC) sample in question. The Quality Control Run Statistics Summary for July 2000 reported "BQC Unacceptable–1," as well as "Technician Error–1" for testing of the metabolite of cocaine. For a trial defense counsel seeking impeachment evidence, the notation "technician error" would be significant. The furnished data put the appellant on notice that there was further information about possible impeachment evidence. We find that the government disclosed information that would have led diligent counsel to the analytical data in question. The evidence was not suppressed; therefore there was no denial of the appellant's due process rights.

■ Although perhaps unnecessary to do so, we also consider the materiality of the evidence at issue. As discussed above, in order to find a constitutional due process violation, the suppressed evidence must be "material either to guilt or to punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. The evidence is material if, taken in context with all the evidence in the case, there is a reasonable probability of a different outcome. *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375.

The evidence in question revealed an error in the preparation or handling of an internal blind quality control sample. As indicated at trial, these samples are called "internal," because they are prepared by the quality control section within the Brooks AFB laboratory. They are called "blind" samples because the analyst does not know which samples are the quality control samples. These vials are prepared separately and inserted into the batch for testing by the quality control section. As the government expert noted, errors in the preparation or use of the quality control specimens would be detected easily.

Q: So, sir, would it be hard or easy to catch if somebody had mislabeled the quality control?

A: If somebody had mislabeled the quality control, the analysis would reveal that rather easily.

Q: Positive drugs wouldn't be positive or negative drugs wouldn't be negative?

A: Right, we would get suspicious at that point.

The government expert testified that the quality control personnel never handle a member's specimen. The fact that the evidence in question related only to the separate handling of a non-member sample, on a separate date from the appellant's test, diminishes greatly its impact as impeachment evidence.

Furthermore, this evidence, taken in context, was not so significant that it would create the possibility of a different result. Throughout the testimony of the government's expert witness there were repeated references to tests that did not come out correctly, and to disciplinary actions against employees for errors during the testing process. Indeed, even the first test of the appellant's specimen by gas chromatography/mass spectrometry (GC/MS) did not

work properly. Thus, there was already a great deal of similar evidence available to the defense with which it could attack the testing process. We also note that according to the Quality Control Run Statistics Summary for July 2000 referenced above, there were a total of 28 confirmation run failures. Three of these were due to "technician errors," and eight were because the blind quality control was unacceptable. The reports for the other months reveal that occasional problems with quality control samples are not uncommon. Therefore, in context the evidence at issue would not have generated serious concerns about the validity of the forensic testing program.

The question is not whether the defense was denied some evidence it could have used for impeachment, but whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles,* 514 U.S. at 435, 115 S.Ct. 1555. Under the circumstances, we conclude that evidence of one blind quality control sample that was not properly handled would not, in context, undermine confidence in the outcome of the trial.

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987). Accordingly, the approved findings and sentence are

AFFIRMED.