UNITED STATES, Appellee

v.

Jason P. GARLICK, Senior Airman
U.S. Air Force, Appellant

No. 04-0669

Crim. App. No. 35298

United States Court of Appeals for the Armed Forces

Argued April 12, 2005

Decided August 25, 2005

CRAWFORD, J., delivered the opinion of the Court, in which
GIERKE, C.J., and EFFRON and ERDMANN, JJ., joined.  BAKER, J.,
filed a separate concurring opinion.

Counsel

For Appellant: Captain L. Martin Powell(argued); Colonel Carlos
L. McDade and Major Sandra K. Whittington (on brief); Major
Terry L. McElyea.

For Appellee: Major John C. Johnson (argued); Lieutenant Colonel
Gary F. Spencer and Lieutenant Colonel Robert V. Combs (on
brief).

Amicus Curiae for Appellant:  Melissa R. Covolesky (law student)
(argued).

Amicus Curiae for Appellee:  David Hartnagel (law student)
(argued).

Military Judge:  Ann D. Shane

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Garlick, No. 04-0669/AF

Judge CRAWFORD delivered the opinion of the Court.

Sitting as a general court-martial, a military judge convicted Appellant, pursuant to his pleas, of one specification of wrongful possession of visual depictions of minors engaged in sexually explicit conduct, in violation of clauses 1 and 2, Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000).  The military judge sentenced Appellant to be reduced to E-1, to be confined for ten months, and to be discharged with a bad-conduct discharge.  The convening authority reduced Appellant's sentence to confinement for 199 days, but otherwise approved the sentence.  On June 10, 2004, the Air Force Court of Criminal Appeals modified the findings:

> [E]xcepting the phrases "on divers occasions" and
> "visual depictions of a minor engaging in sexually
> explicit conduct" from the finding of guilty,
> substituting therefore "thirty-four visual depictions
> of minors engaged in sexually explicit conduct, as
> referenced in Prosecution Exhibit 1 and as illustrated
> by the thirteen attachments to that exhibit.

United States v. Garlick, No. ACM 35298, 2004 CCA LEXIS 183, at *8, 2004 WL 1539576, at *3 (A.F. Ct. Crim. App. June 10, 2004).  That court reassessed and affirmed the sentence.  On December 10, 2004, this Court granted review of the following issue:

> WHETHER APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED
> BY THE PROSECUTION'S FAILURE TO DISCLOSE DISCOVERABLE
> INFORMATION PRIOR TO TRIAL.[1]

---

[1]  We heard oral argument in this case at The George Washington University School of Law, Washington, D.C., as part of the Court's "Project Outreach."  See United States v. Mahoney, 58

We conclude that any error that may have resulted from a failure to disclose information was harmless beyond a reasonable doubt, and that Appellant's guilty plea was knowing and voluntary.  Finding no basis in fact and law to question the providence of that plea, we affirm.

                              FACTS

The court below summarized the facts, as follows:

The appellant was a member of an Internet group (Egroup) called Candyman, an electronic forum devoted to child pornography.  The appellant was a subscriber from 15 January 2001 to 28 January 2001.  An investigation by the Federal Bureau of Investigation (FBI) revealed that the appellant was in possession of numerous images of child pornography at his home near Eglin Air Force Base, Florida.  These images were discovered during a search authorized by a civilian federal magistrate pursuant to a probable cause affidavit submitted by the FBI.  Trial in the case took place on 5 August 2002.[2]

The appellant avers that on 12 August 2002, a week after his court-martial ended, the trial counsel notified the trial defense counsel by memorandum that a statement contained in the FBI's probable cause affidavit was untrue.  Trial defense counsel appended this memorandum to the appellant's clemency submissions, which are attached to the record of trial.  The statement in question is as follows: "Every e-mail sent to the [Candyman] group was distributed to every member automatically.  Therefore, when an individual transmitted child pornography to

---

M.J. 346, 347 n.1 (C.A.A.F. 2003).  The amici curiae appeared pursuant to Rule 13A of the Court's Rules of Practice and Procedure.

[2] There is no dispute that Appellant timely received (at or before the Article 32 investigation) the search warrant and supporting affidavit of Special Agent [SA] Kerry Davis.

3

> the Candyman group via e-mail, those images were transmitted to every one of the group members." According to the trial counsel's memorandum, however, automatic receipt of e-mails was only the default setting for subscribers to the group, and individuals were able to elect not to receive emails if they so chose. According to this memorandum, this information was known to the FBI prior to trial in the appellant's case.

Garlick, 2004 LEXIS 183, at *2, 2004 WL 1539576, at *1 (footnote added).

The eleven-page affidavit of Special Agent (SA) Davis, upon which the U.S. Magistrate Judge's search warrant was based, included brief details of SA Davis's five-year FBI career; described the premises and items to be seized; provided definitions from the Child Pornography Prevention Act, 18 U.S.C. §§ 2251-2260 (2000), and other sources; explained basic workings of computers and peripheral devices; explained how the internet is used as a medium for traffic in child pornography and how internet sites and user addresses work, including that even on-line storage can leave detectable traces on the individual computer used to effect that storage. This section also explained that those interested in child pornography tend to collect, trade, and preserve the images on computers, disks, etc., and usually retain the images for long periods of time. The affidavit then provided nearly four pages of information specific to operation of the Candyman Egroup and to Appellant's involvement therein:

25. . . . The purpose of the Candyman Egroup, as stated on its own website, was as follows:

"This group is for People who love kids.  You can post any type of messages you like too [sic] or any type of pics and vids you like too [sic].  P.S. IF WE ALL WORK TOGETHER WE WILL HAVE THE BEST GROUP ON THE NET."

. . . .

27. **Voluntary Egroup Membership:**  In order to join the Egroup, a person had to visit the URL . . . and send an e-mail to the group moderator requesting permission to join.  The moderator would then send a confirmation notice to the requestor's e-mail account, advising him that he now had access to the Egroup.  There was no fee to join.  In addition, at the bottom of each e-mail were directions instructing a member what to do if he wanted to stop receiving e-mails from the group and no longer desired to be a member of the group.

28. . . . Second, all new members of the Egroup were immediately added to the Candyman e-mail list.  Every e-mail sent to the group was distributed to every member automatically.  Therefore, when an individual uploaded and transmitted child pornography to the Candyman group, those images were transmitted to every one of the group members . . . .  [emphasis added to indicate factually misleading material.]

29. **Images Posted on the Website**:  The primary feature of the Candyman Egroup's website was the 'Files' section.  This allowed members to upload and download images directly to and from the website.  SA Binney was a member of the Egroup from January 2, 2001, through February 6, 2001, when Yahoo! closed down the Egroup.  During that period of time, SA Binney captured approximately one hundred images and video clips that had been uploaded to the website.  The images and video clips can be broken into three categories: 1) the majority depicted prepubescent minors engaged in different sexual activities; 2) a large number of the images focused on the genitalia of the nude minors; 3) the remainder were considered child erotica.  Yahoo was unable to tell the FBI who downloaded images or video clips from the Egroup.

However, when someone uploaded a file to the website, the Egroup was set up such that a notice was sent via e-mail to all members advising them of the name of the file, which folder it had been posted in, the e-mail address of the individual who posted it and, in some cases, a description of the file. In other words, child pornography posted to the website was automatically distributed to the members, each of which had knowingly joined an Egroup devoted to the trading of child pornography. [emphasis added to indicate factually misleading material.]

30. **E-mail received**: From January 2, 2001, through February 6, 2001, SA Binney received approximately 498 e-mail messages from the Candyman Egroup, most of which contained images of child pornography or child erotica or information concerning those subjects or the operation of the Egroup. During this period, SA Binney received a total of approximately 183 child erotica images and 105 child pornography images through these e-mails. The last e-mail containing child pornography SA Binney received from the group he received on February 6, 2001 -- the date that Yahoo! closed down the Egroup. This e-mail contained two child pornography images. The first image depicts a nude female approximately ten years of age performing oral sex on an adult male while the second shows the same female straddling an adult male while masturbating him.

31. On January 22, 2001, SA Binney served a federal grand jury subpoena on Yahoo Services, the owner and operator of Egroups. Yahoo responded with a list of approximately 3397 e-mail addresses of Candyman Egroup members. Specifically, the e-mail address **garlickjason@hotmail.com**, was listed on the Candyman Egroup list.

. . . .

33. . . . Yahoo provided subscription logs (indicating the dates and times subscribers requested to subscribe and/or unsubscribe to the different Egroups), and post logs indicating the dates and times members posted images and/or text messages to the Egroups.

6

United States v. Garlick, No. 04-0669/AF

Affidavit For Search Warrant, Investigating Officer's Report,
June 28, 2002, Allied Papers.  See also Garlick, 2004 LEXIS 183,
at *3, 2004 WL 1539576, at *1.

    SA Davis did not append these "subscription logs" to the
affidavit and did not aver any dates and times pertaining to
Appellant's alleged activity with the Egroup, or that Appellant
was a member of the Egroup on any date other than January 22,
2001.[3]  After documenting that "garlickjason@hotmail.com" was
Appellant's "username" and that Appellant lived at the address
to be searched, SA Davis added:

> 44.  On August 31, 2001, pursuant to the court order,
> Yahoo! provided a zip disk to the Houston Division of
> the FBI containing all log files from the three
> Egroups ["Candyman," "Shangri_la," and "Girls 12-16"].
> Houston analyzed and copied all information
> referencing garlickjason@hotmail onto a CD which was
> forwarded to the Pensacola Resident Agency of the FBI.
>
> . . . .
>
> 46.  Attached to this affidavit are copies of 15
> photographs which were received by **Jason P. Garlick**
> while he was a member of the Candyman e-group.  These
> photographs are a sample of the 116 photographs that
> **Jason P. Garlick** received while a member of that e-
> group.

Affidavit For Search Warrant, Investigating Officer's Report,
June 28, 2002, Allied Papers.

---

[3] January 22, 2001, is the date the FBI's subpoena was served on
Yahoo; the affidavit does not give the date of Yahoo's response
or the effective date of the information contained therein.

7

   After receiving formal, post-trial notice of misstatements

in the search affidavit,[4] Appellant's trial defense counsel

requested a ten-day delay in the submission of clemency matters:

> On 12 Aug 02, the defense was informed that a factual
> inconsistency existed in the affidavit submitted by SA
> Kerry Davis in obtaining the search warrant for SrA
> Garlick's home. In order to effectively advise my
> client and prepare an adequate clemency request or
> take other appropriate action, I require additional
> time to investigate and research this matter.[5]

After this delay, the defense counsel submitted clemency matters

to the convening authority on Appellant's behalf, to which she

appended trial counsel's notice of "factual inconsistencies."

Defense counsel requested no relief related to these

"inconsistencies," nor does the appellate record indicate that

defense counsel requested either a post-trial Article 39(a)

session[6] or a new trial.[7]

---

[4] According to this memorandum, trial counsel received notice of the defective search affidavit two days after Appellant's trial. Trial counsel's notice to defense counsel was delivered seven days after trial, on the same day the record of trial was authenticated. The memorandum avers that the affidavit's defects were "known to the FBI prior to trial in the Appellant's case." Garlick, 2004 LEXIS 183, at *3, 2004 WL 1539576, at *1. Nonetheless, this memorandum reflects only one failed attempt by the FBI to FAX notice of these defects to military authorities prior to trial.

[5] Request for Delay, dated August 14, 2002.

[6] See Rule for Courts-Martial (R.C.M.) 1102(b)(2).

[7] See R.C.M. 1210; United States v. Scaff, 29 M.J. 60 (C.M.A. 1989).

DISCUSSION

Appellant contends that Brady v. Maryland[8] and R.C.M. 701(a)(6) compel disclosure of exculpatory evidence, including impeachment evidence, for use at trial, and that the Government failed to make such disclosure. Further, because the Government cannot demonstrate beyond a reasonable doubt that the results of trial would not have been different, Appellant argues that he is entitled to a new trial under this Court's decision in United States v. Roberts.[9]

Assuming that the Government had a duty to disclose the information at issue in a timely manner, the distinctive facts set forth below would still compel us to evaluate Appellant's claims in light of whether there is a "'substantial basis' in law and fact for questioning [Appellant's] plea."[10] In determining whether Appellant's plea was knowing and voluntary,[11] we look to the record of trial and the documents considered by the court below.

As detailed above, the affidavit of SA Davis raised several concerns, which, taken together with Appellant's admitted

---

[8] 373 U.S. 83 (1963).

[9] 59 M.J. 323 (C.A.A.F. 2004).

[10] United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991).

[11] United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969); R.C.M. 910.

familiarity with the Candyman website and its operation, cannot have escaped the notice of both Appellant and his counsel.

There is no indication that SA Davis included the zip drive with his affidavit or catalogued its contents, and while paragraphs 44 and 46 of the affidavit could be read to imply otherwise, the actual language of those paragraphs fails to allege that the "Houston Division" found any e-mails, uploads, or downloads bearing garlickjason@hotmail.com, or that that office attributed any images of child pornography to Appellant's possession, control, or usage. Finally, the presumptive support for SA Davis's conclusion that the fifteen photographs attached to the affidavit "were received by **Jason P. Garlick** while he was a member of the Candyman e-group," or for SA Davis's further conclusion that those photographs "are a sample of the 116 photographs that **Jason P. Garlick** received while a member of that e-group," is SA Davis's earlier, erroneous description of the "automatic e-mail" system of the website.[12]

Nothing in Appellant's pretrial agreement precluded a suppression motion to contest either the factual sufficiency of the affidavit or any other perceived defect in the warrant or subsequent authorization. Appellant made no motions. Even

---

[12] In a Stipulation of Fact, Appellant acknowledges receipt of only ninety-six images, indicating his awareness of the factual inaccuracy of that portion of SA Davis's affidavit.

without the "factual inconsistencies" provided by the Government, this was an affidavit ripe for litigation, yet Appellant and his counsel declined to litigate the issue prior to Appellant's guilty plea.

If there remained a question regarding Appellant's knowledge of the necessary factual support for such a motion, that question was emphatically resolved by his counsel's later fully informed and well-considered declination either to raise the motion in a post-trial Article 39(a) session,[13] or request a new trial from the convening authority.

During the Care inquiry, the following colloquy occurred:

MJ:  I just want to make sure that none of these . . . images that you've pled guilty to possessing weren't delivered to your computer by mistake . . . . So what you're telling me is there was no mistake?

ACC:  Yes, Ma'am.

MJ:  So you intentionally downloaded the images, knowing what they were?

ACC:  Yes, Ma'am.

Further, the Stipulation of Fact, knowingly and willingly entered into by Appellant, describes Appellant's subscription to the Candyman Egroup and the Egroup's e-mail options, but makes no mention of any "automatic e-mail" option. That omission, as well as the stipulation's inclusion of a corrected figure for

---

[13] See R.C.M. 1102(b)(2); Military Rule of Evidence 311(d)(2)(A).

11

the number of photographs Appellant downloaded from the Candyman website, Appellant's admission to the military judge that he had purposely and intentionally downloaded these images, and Appellant's post-trial decision not to litigate when presented with the opportunity to do so, detract significantly from Appellant's claim that he was not already aware of the "factual inconsistencies" disclosed by the Government, as well as other errors in SA Davis's affidavit.

CONCLUSION

The information not disclosed by the Government was within Appellant's knowledge well before trial. Even after being formally notified after trial of a disclosure error, and obtaining a delay to consider legal options, Appellant's counsel declined to litigate the issue or advocate its importance to the convening authority in her R.C.M. 1105 submission. Under these unique circumstances, any error that may have resulted from a failure to disclose such information is harmless beyond a reasonable doubt. Accordingly, we find no basis in law or fact to question the providence of Appellant's voluntary plea, and we affirm the decision of the United States Air Force Court of Criminal Appeals. In so doing, however, we do not retreat from our established practice of urging trial counsel to execute diligently their continuing duty to disclose discoverable information to the defense. See R.C.M. 701(d).

United States v. Garlick, No. 04-0669/AF

BAKER, Judge (concurring):

I concur in the Court's decision affirming Appellant's conviction.  I write separately, however, because I believe that the Court's analysis should focus on the effect of the violation of Brady v. Maryland, 373 U.S. 83 (1963), in the warrant affidavit, rather than on the Appellant's imputed pretrial knowledge of that error.

Waiver

The majority disposes of Appellant's claim principally based upon his failure to act on imputed knowledge of the misrepresentation in the warrant affidavit prior to entry of his guilty plea.  Although the lead opinion never uses the term "waiver," its analysis is strongly redolent of that concept.  See, e.g., Black's Law Dictionary 1611 (8th ed. 2004) (defining "waiver" as "the voluntary relinquishment or abandonment -- express or implied -- of a legal right or advantage. . . . The party alleged to have waived a right must have had both knowledge of the existing right and the intention of foregoing it.").

An unconditional guilty plea "waives any objection, whether or not previously raised, insofar as the objection relates to the factual issue of guilt of the offense(s) to which the plea was made."  R.C.M. 910(j).  But a valid guilty plea must be intelligent and voluntary.  United

States v. Roeseler, 55 M.J. 286, 289 (C.A.A.F. 2001);

United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

"Misapprehension of the strength and extent of the

prosecution's case which is engendered by misrepresentation

or other impermissible government conduct is a matter which

clearly could impact on the voluntariness of the decision

by appellant . . . to plead guilty."  United States v.

Payton, 23 M.J. 379, 381 (C.M.A. 1987).  See also Von

Moltke v. Gillies, 332 U.S. 708, 720 (1948).

Here, the Government failed to fulfill an affirmative

duty to disclose a known factual misrepresentation in the

search warrant affidavit.  That affidavit asserted that

Candyman list members automatically received all materials,

including child pornographic images, distributed to the

list.  In reality, subscribers chose from among three

different delivery options, two of which did not

automatically distribute pornographic images to list

members.  Indeed, the majority of subscribers elected one

of the "non-automatic" options.  United States v. Perez,

247 F. Supp. 2d 459, 467-68 (S.D.N.Y. 2003); United States

v. Strauser, 247 F. Supp. 2d 1135, 1137 (E.D. Mo. 2003).

The majority contends that Appellant and his counsel

must have been aware of these errors prior to entry of

Appellant's guilty plea.  But it seems illogical to impute

such knowledge to the Appellant where the government agent preparing the actual warrant affidavit was himself apparently oblivious to the error.  And once the Government did become aware of its misrepresentation, it failed to provide Appellant notice of the defect until several days after he entered his unconditional guilty plea and was sentenced.  Because Appellant's plea was entered without notice of a potentially fatal misrepresentation in the search warrant, I do not believe that he waived his right to challenge that warrant for probable cause.

Harmless Error

Ultimately, however, I conclude that Appellant's conviction must survive because, even absent the false material, the remaining information in the warrant affidavit continues to establish probable cause.  At the threshold, "[t]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . concluding' that probable cause existed."  United States v. Carter, 54 M.J. 414, 418 (C.A.A.F. 2001) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (internal citations omitted).

As we recently stated in United States v. Roberts, 59 M.J. 323, 325 (C.A.A.F. 2004), "[o]ur review of discovery/disclosure issues utilizes a two-step analysis:

first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on the appellant's trial." As indicated above, and conceded by the Government, the Government's knowledge of the false information in the warrant affidavit was clearly material to Appellant's defense, and consequently, subject to disclosure under Brady, Article 46, UCMJ, 10 U.S.C. § 846 (2000), and R.C.M. 701. Moreover, the Government's duty to diligently disclose newly discovered evidence continued throughout the duration of the court-martial proceedings. R.C.M. 701(d).

Proceeding to the second step of the analysis, erroneous nondisclosure will generally entitle an appellant to relief only where the appellant demonstrates a reasonable probability of a different result at trial had the evidence been disclosed. Roberts, 59 M.J. at 326-27. But where an appellant establishes that the Government failed to disclose discoverable evidence in response to a specific request, the burden shifts to the Government to demonstrate the nondisclosure was harmless beyond a reasonable doubt. Id. at 327.

Here, Appellant's counsel served a fairly detailed discovery request to trial counsel asking for, among other things:

> [A]ll personal or business notes, memoranda, and writings prepared by investigators incident to said case (including FBI or other civilian law enforcement) which are not furnished pursuant to any other provisions of this request . . .[;] any known evidence tending to diminish credibility of . . . all potential witnesses . . .[; and] any and all evidence in the possession of the Government or otherwise known to Trial Counsel which reasonably may tend to: 1) negate the guilt of the Accused; 2) reduce the guilt of the Accused to the offenses charged; or 3) reduced the punishment.

I conclude that the Government's failure to disclose the erroneous information pursuant to this request shifts the burden to the Government to demonstrate that the error was harmless beyond a reasonable doubt.

The probable cause predicate in the search warrant would be invalid if the Court were to conclude that the Government included the defective material in the supporting affidavit "knowingly and intentionally, or with reckless disregard for the truth," and that the affidavit's remaining material was inadequate to establish probable cause after the false information was set aside. Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Because the erroneous Candyman affidavit was used to support search warrants in literally hundreds of investigations of list

United States v. Garlick, No. 04-0669/AF

members around the world, this precise issue has been repeatedly litigated in other courts. At least three federal district courts decided that the Government acted recklessly and that the remaining information in the affidavit was insufficient to establish probable cause. United States v. Kunen, 323 F. Supp. 2d 390 (E.D.N.Y. 2004); Perez, 247 F. Supp. 2d 479-85; Strauser, 247 F. Supp. 2d 1135.

Consistent with the majority of courts considering this issue, however, I conclude that, regardless of the Government's knowledge or recklessness regarding the erroneous material, the information remaining in the warrant affidavit was adequate to demonstrate probable cause. See United States v. Froman, 355 F.3d 882 (5th Cir. 2004); United States v. Hutto, 84 F.App'x. 6 (10th Cir. 2003); see also United States v. Schmidt, 373 F.3d 100 (2d Cir. 2004) (stating in dicta that the affidavit continued to establish probable cause, but deciding case on other grounds). While the allegation that Appellant automatically received pictures of child pornography in his e-mail was a significant component of the warrant affidavit's probable cause predicate, it was not the only one. In particular, the affidavit asserted that the "website had several different features" including a

6

United States v. Garlick, No. 04-0669/AF

"'Files' section [which] provided an area for members to post images or video files for others to upload."  Indeed, the affidavit described the Files section as the "primary feature" of the website, and noted that the agent investigating the case downloaded approximately one hundred images of child pornography and erotica over a one month period.  The affidavit also quoted the website's description of itself as a "group for people who love kids" and invitation to "post any type of messages you like too [sic] or any type of pics and vids you like too [sic]." Appellant does not challenge these portions of the affidavit.

As we recently reiterated in United States v. Bethea:

> A probable cause determination is a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the issuing judge], including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

> The Supreme Court has emphasized that probable cause is a flexible, common-sense standard.  A probable cause determination merely requires that a person of reasonable caution could believe that the search may reveal evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.  So even though people often use probable to mean more likely than not, probable cause does not require a showing that an event is more than 50% likely.

7

61 M.J. 184, 187 (C.A.A.F. 2005) (internal citations and quotation marks omitted) (emphasis in original).

I think it is a reasonable inference from the uncontested information in the warrant affidavit that a probable purpose of Candyman membership was to gain access to the child pornography available on the website. Someone joining the site was likely to download and trade in child pornography. Thus, I am satisfied beyond a reasonable doubt that the unchallenged portion of the warrant affidavit constituted a substantial basis for the issuing magistrate to conclude that there was probable cause that Appellant had downloaded child pornography from the Candyman website, and retained such images in his possession.

My conclusion is further ratified by two additional considerations. First, in those cases where courts have suppressed the fruits of the Candyman warrant, the defendants demonstrated that they had elected a non-automatic distribution option. Perez, 247 F. Supp. 2d at 471; Strauser, 247 F. Supp. 2d at 1137. Thus, the erroneous information in the warrant affidavit was not only false, but demonstrably misleading as applied to those defendants' receipt of child pornography. Here, Appellant does not claim that he chose one of the non-automatic

8

delivery options.  Thus, there is no basis for an inference of actual prejudice.

Finally, I find it significant that Appellant did not assert his plea was improvident in the clemency package or in a post-trial session in front of the military judge.  He raised the issue as a legal concern only after it became apparent that other Candyman defendants were having some success raising the issue.

In sum, Appellant alleges that the contested warrant lacks probable cause, and consequently, that his guilty plea was improvidently entered.  Because I disagree with Appellant regarding his first proposition, I conclude that there is no substantial basis in law or fact to question the providence of his guilty plea.  United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991).