KRAUSS, Judge,
dissenting:
I agree that Brady disclosure requirements apply post-trial through the completion of direct appeal that ends with the Supreme Court. See Imbler v. Pachtman, 424 U.S. 409, 427 n. 25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Fields v. Wharrie, 672 F.3d 505, 514-515 (7th Cir.2012); Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir.2001); United States v. Behenna, 71 M.J. 228, 246 (C.A.A.F.2012) (Effron, J. dissenting). Whether a broader obligation to disclose under Article 46, Uniform Code of Military Justice [hereinafter UCMJ] UCMJ and Rule for Courts-Martial [hereinafter R.C.M.] 701 extends beyond the end of trial is another question. See United States v. Lofton, 69 M.J. 386, 390 (C.A.A.F.2011); United States v. Simmons, 38 M.J. 376, 381-82 (C.M.A.1993) (distinguishing government obligations under R.C.M. 701 and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)); Simmons, 38 M.J. at 383 (Gierke, J. concurring); see also United States v. Campbell, 57 M.J. 134 (C.A.A.F.2002) (discussing parameters of appellate discovery). What we can say is that when an accused pleads guilty without the benefit of full discovery he takes certain risks that bear certain consequences, not the least of which is the risk that he and his lawyer may have failed to appraise the quality of the government’s evidence against them. See McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Brady v. United States, 397 U.S. 742, 756-57, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); see also United States v. King, 30 M.J. 59, 68-69 (C.M.A.1990) (McMann applicable to direct appeals). Secondly, where an accused fails to request discovery of the specific material in question and does nothing to discover that material himself, where that material is reasonably discoverable by a reasonably diligent defense counsel, he is in no position to complain about what might otherwise constitute a “Brady violation.” See Simmons, 38 M.J. at 382 (citing United States v. Wilson, 901 F.2d 378 (4th Cir.1990)); United States v, Hicks, 848 F.2d 1 (1st Cir.1988); Jarrell v. Balkcom, 735 F.2d 1242 (11th Cir.1984); United States v. LeRoy, 687 F.2d 610, 618-19 (2d Cir.1982), cert. denied, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); Gollaher v. United States, 419 F.2d 520 (9th Cir.1969), cert. denied, 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969); see also United States v. Garlick, 61 M.J. 346, 351 (C.A.A.F.2005).
Because here the appellant decided to plead guilty without the benefit of full discovery, failed to request discovery of the type of material at issue, and failed to discover the material himself despite the fact that such evidence was readily discoverable, the ques *616 tion is not whether and how he obtains relief for any ostensible Brady violation but whether his defense counsel was ineffective. See Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); McMann, 397 U.S. 759, 90 S.Ct. 1441; Simmons, 38 M.J. at 382 n. 3; United States v. Moussaoui, 591 F.3d 263, 278-81, 285-90 (4th Cir.2010) (applying Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, and McMann, 397 U.S. 759, 90 S.Ct. 1441, on direct appeal relative to a Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, issue); see also United States v. Brozzo, 58 M.J. 284 (C.A.A.F.2003) (summ. disp.) (setting aside Air Force Court decision, United States v. Brozzo, 57 M.J. 564 (A.F.Ct.Crim.App.2002), and remanding to Air Force Court for consideration of an ineffective assistance of counsel issue under asserted Brady violation circumstances); United States v. Brozzo, 60 M.J. 310 (C.A.A.F.2004) (summ. disp.) (reversing the subsequent Air Force Court decision, United States v. Brozzo, ACM 34542, 2003 WL 22047904 (A.F.Ct.Crim.App. 26 Aug. 2003), that held no ineffective assistance of counsel, in light of a government concession of a prejudicial discovery violation, referring to United States v. Jackson, 59 M.J. 330 (C.A.A.F.2004), which ultimately relied on R.C.M. 701 in its holding).
Appellant bears the risk of regretting his plea of guilty by discovering, after sentence is announced, that he and his lawyer may have jumped the gun a bit in presuming that the substance seized by the police is what the government says it is absent scientific test results being complete. The fact that he is now in possession of summarized hearsay testimony of a police investigator from his co-conspirator’s (PFC BB’s) Article 32, UCMJ, investigation that is ultimately ambiguous as to the supposed nature of the substance at issue is not a substantial basis to question the plea. See United States v. Stokes, 65 M.J. 651 (Army Ct.Crim.App.2007); United States v. Kelly, 32 M.J. 813 (N.M.C.M.R.1991).[14]
There is no doubt that if the United States were in possession of such information before or at the time of appellant’s plea and failed to disclose it, we would be in a significantly different situation. See, e.g., Garlick, 61 M.J. 346; Simmons, 38 M.J. 376. It would certainly be the ease if appellant had requested discovery of such information and was willing to wait until its production before entering a plea. See Garlick, 61 M.J. 346. However, appellant fails to establish a R.C.M. 701 violation, let alone a Brady violation, prior to or at the time of his guilty plea. He does not assert that with this information his plea would have been different. He neither asserts nor does the record reveal any affirmative misrepresentation by the United States, coercion to plead guilty, or infirmity of appellant, at the time of his plea, to do so providently. Therefore, there is no substantial basis to question that plea. See Tollett, 411 U.S. 258, 93 S.Ct. 1602; McMann, 397 U.S. 759, 90 S.Ct. 1441; Moussaoui, 591 F.3d 263; Garlick, 61 M.J. 346.
The majority apparently blurs obligations under R.C.M. 701 and Brady and thereby invites the perverse results that follow: an accused who enjoys no relief for a Brady violation before his guilty plea now enjoys complete relief for a Brady violation occurring after acceptance of his provident plea. See United States v. Ruiz, 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002);[15] United States v. Conroy, 567 F.3d 174, 178-79 (5th Cir.2009); see also Moussaoui, 591 F.3d at 278-81; McCann v. Mangialardi, 337 F.3d *617 782, 787-88 (7th Cir.2003). The majority does not hold that the higher disclosure obligations of Article 46, UCMJ, and R.C.M. 701 apply post-conviction. See, e.g., United States v. Roberts, 59 M.J. 323, 325 (C.A.A.F.2004); Simmons, 38 M.J. 376. There is good reason for this: R.C.M. 701(d) imposes a continuing duty to disclose before or during the court-martial and is based on the federal rule of discovery and American Bar Association standards relative to discovery before and during trial. R.C.M. 701(d); R.C.M. 701(d) analysis at A21-34.
Nor does the majority rely on this court’s authority under Article 66, UCMJ, to rectify an injustice that warrants correction. See generally United States v. Nerad, 69 M.J. 138 (C.A.A.F.2010). Instead, it seems to rely more on a notion like that of “military due process,” a concept recently cashiered by our superior court. United States v. Vazquez, 72 M.J. 13, 19 (C.A.A.F.2013). As here discussed, under circumstances such as those present in this case, an appellant’s Constitutional rights to the fairness and integrity of his convictions and sentence are enforced through the Sixth Amendment guarantee of the effective assistance of counsel, not the Fifth Amendment Due Process Clause. See Moussaoui, 591 F.3d at 279 (citing Blackledge v. Perry, 417 U.S. 21, 29-30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)), 285-90; Stokes, 65 M.J. at 656-57.[16]
Absent action by Congress or the President to define post-conviction discovery rules for the military justice system, we are left with the responsibility to enforce the Brady line of cases as fully defined by the common law. As referenced above, this line of cases is not so forgiving of defense counsel’s failures or the ramifications of tactical decisions made by counsel or choices made by an appellant before and during a guilty plea. In addition, the Brady rule should not be applied where a reasonably diligent defense counsel could have readily obtained the evidence that was not otherwise disclosed. See Cobb v. Thaler, 682 F.3d 364, 378-79 (5th Cir.2012); Spirko v. Mitchell, 368 F.3d 603, 610-11 (6th Cir.2004); Boss v. Pierce, 263 F.3d 734, 740-41 (7th Cir.2001); Barnes v. Thompson, 58 F.3d 971, 975-76 (4th Cir.1995).
Applying the law that we have to the question of whether the United States denied appellant a fair opportunity for clemency or corrective action from the convening authority in this case, because it failed to disclose favorable information discovered after trial, appellant loses.[17] To the extent the Brady rule applies after acceptance of a provident guilty plea, where an appellant fails to specifically request discovery of such material and fails to obtain and exploit the matter himself when it is readily available for discovery, he surrenders opportunity to fix blame on the United States for what might otherwise warrant relief. See Wilson, 901 F.2d 378; Garlick, 61 M.J. 346; Simmons, 38 M.J. at 378.
It is plain from this record that a reasonably diligent defense counsel could have readily obtained the information about which appellant now complains. Indeed, appellant’s trial defense counsel followed and made reference to PFC BB’s case in his R.C.M. 1105 matters submitted to the convening authority. This fact is enough to establish that appellant’s defense counsel could have readily discovered PFC BB’s plea of attempt rather than manufacture of methamphetamine and the reasons for it.[18] See, e.g., Westley v. *618 Johnson, 83 F.3d 714, 725-26 (5th Cir.1996) (no Brady violation where transcript of co-defendant’s ease containing favorable information for defense was readily available) and cases cited above relevant to readily discoverable evidence and Brady. Private First Class BB was tried by the same office on charges referred by the same convening authority at the same installation within a few months of appellant’s own trial and two weeks prior to submission of appellant’s R.C.M. 1105 matters. Appellant offers no explanation as to why he limited reference to PFC BB’s sentence rather than the full facts of PFC BB’s ease. It appears from the record and the affidavit of appellant’s counsel that they both simply presumed the substance was methamphetamine without thinking much further about it (there was apparently at least a field test that showed positive for methamphetamine), as appellant now presumes it was not methamphetamine based on the related proceedings discussed.
Of course, when the United States accuses a soldier of manufacturing a contraband substance, they will likely submit that substance for testing by an accredited laboratory before subjecting that soldier to a potential criminal conviction and deprivation of liberty. The defense can request such testing. The soldier can also plead not guilty and force the government to prove his guilt.
It makes sense that the government might forgo the expense and time of testing that substance, if the accused soldier insisted he could enter a provident plea without the need for any such confirmation. It also makes sense that that soldier’s defense counsel might reasonably rely on his client’s insistence despite counsel’s advice that laboratory testing might reveal otherwise and as long as the soldier understood the risk he was taking by pleading guilty prior to full discovery. The law requires we presume defense counsel did just that. See generally United States v. Perez, 64 M.J. 239, 243 (C.A.A.F.2006). More problematic for defense counsel is that neither the record of trial, allied papers or appellate filings suggest he made any discovery request let alone request for the type of information at issue. But appellant does not assert that his defense counsel was deficient in his advice or in failing to present matter to the convening authority that might have obtained some corrective action.
Because appellant fails to make a cognizable Brady violation claim and because he makes no claim of ineffective assistance of counsel, and the record is insufficient by itself to establish ineffective assistance, I cannot join the majority opinion.

. It is unclear whether or to what extent the majority relies on the stipulation of fact in Private First Class BB’s case in deciding that the government in this case violated the Brady rule. I find no authority, and the majority cites no authority, for the proposition that a stipulated fact in one case is relevant and available to establish the existence of the same fact in a related but separately adjudicated case. See Jacobs v. Scott, 513 U.S. 1067, 115 S.Ct. 711, 130 L.Ed.2d 618 (1995) (Stevens, J. dissenting) (citing United States v. Powers, 461 F.2d 1089, 1097 (7th Cir.1972) (Stevens, J. dissenting) (lamenting the ability of the United States to take inconsistent positions in related cases)).

. It is also important to note that the majority opinion fails to recognize that Supreme Court precedent certainly precludes advance of any Brady violation claim relative to a guilty plea based on nondisclosure of material impeachment evidence. United States v. Ruiz, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002); see also Moussaoui, 591 F.3d at 286.

.And so much the better, a guilty plea relieves the United States of its burden to prove an accused guilty at a fair trial, ensuring the accuracy of the plea through the Sixth Amendment rather than the Fifth, under circumstances such as these, enforces the responsible and prompt litigation and resolution of such matters at the trial level, and before action, rather than rewarding happenstance discovery upon post conviction review, while respecting a soldier’s choice to plead guilty after consultation with his counsel. This is increasingly important as Congress limits the discovery purpose of the Article 32, UCMJ, investigation and the authority and discretion of the convening authority to effectively address issues like those in this case.

. See District Attorney’s Office for the Third Judicial District v. Osborne, 557 U.S. 52, 69-70, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009) (Supreme Court relying on post-trial discovery processes of individual jurisdictions, on direct appeal, to resolve this sort of problem.).

. The majority assumes the existence of an exculpatory laboratory report and its contents though there is no such report in the record of either this case or the case of appellant’s co- *618 conspirator. In a case like this, where there is, at best, the possible existence of conflicting evidence on the subject of the nature of an alleged contraband substance, rather than evidence of actual innocence, for example, the relief provided by the majority is rather extraordinary. Appellant admitted, under oath and after being advised of his rights to trial, that the substance produced was methamphetamine. He did this after receipt of a police report stating that the substance seized was methamphetamine. Presuming the existence of a report of scientific evidence, whose contents and accuracy are untested because of appellant's guilty plea, is frail basis to disapprove an otherwise reliable finding of guilty.