# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, K.M. MCDONALD, M.C. HOLIFIELD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**DARRON D. WARD, JR.**
**CULINARY SPECIALIST SEAMAN APPRENTICE (E-2), U.S. NAVY**

**NMCCA 201400021**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 13 September 2013.
**Military Judge:** CDR Michael J. Luken, JAGC, USN.
**Convening Authority:** Commander, Naval Air Force Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation**: CAPT T.J. Welsh, JACG, USN.
**For Appellant:** LT Jessica L. Fickey, JAGC, USN.
**For Appellee:** LCDR Keith B. Lofland, JAGC, USN; Maj David N. Roberts, USMC.

**31 July 2014**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification each of fleeing apprehension, rape, and communicating a threat, in violation of Articles 95, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 895, 920,

and 934.[1]  The members sentenced the appellant to confinement for 933 days and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged and, except for the punitive discharge, ordered it executed.

The appellant raises three assignments of error: (1) that members below the rank of E-7 and above the rank of O-5 were impermissibly excluded in the nomination process; (2) that the Government failed to respond to a specific defense discovery request for materials used by the CA in the nomination and selection of members; and, (3) that the appellant's conviction for rape under Article 120 was not legally or factually sufficient.[2]

After careful consideration of the record of trial, the parties' pleadings, and the appellant's assignments of error, we conclude that the findings and the sentence are correct in law and fact and that no error prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant and the victim in this case, a nineteen-year-old civilian named KB, met on a social networking website. On 21 February 2013, the appellant and KB began messaging one another via the website.  Though the two had not previously met, KB asked the appellant to come and pick her up because she was bored.  The appellant indicated that he would not pick her up unless they were going to have sex.  After some banter about how much time they would spend getting to know one another first, KB agreed and asked the appellant to meet her at a fast food restaurant near her home.

Upon meeting the appellant at the restaurant, KB determined that she was not physically attracted to the appellant, and communicated that to him.  Nonetheless, KB got into the car with the appellant, but quickly changed her mind and asked to be let out of the vehicle.  After she got out, the appellant convinced

---

[1] The members acquitted the appellant of one specification of assaulting a commissioned officer in violation of Article 128, UCMJ, 10 U.S.C. § 928.

[2] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1992).

KB to return to the vehicle by stating the two would not have to do anything physical, but rather would just spend some time together.

Although the appellant told KB they were going to his apartment, he drove KB to an on-base hotel where he had procured a room. Once in the room, the appellant began to pursue a physical relationship with KB. The appellant hugged her, kissed her, and tried to remove her pants. During these encounters KB tried to discourage the appellant by telling him she didn't want to do anything, and by repeatedly going to the bathroom to get away from him. While in the bathroom, KB sent a text to a Navy friend, who she knew would have access to the base, and asked him to come pick her up.

At trial, KB testified that when she returned to the main room, the appellant was irritated, and that he again sought to unbuckle her belt and remove her pants. KB testified that she extricated herself from the situation by offering to remove the pants herself. When she got up, she did not remove her pants, but rather went to the other side of the hotel room. KB testified that the appellant became angry, pushed her down on the bed, and started to pull down her pants. KB testified that she yelled "no" and "don't rip my pants." KB also testified that she placed a pillow over her head to protect herself from the appellant, and that she used the cover to attempt to call 911. Although KB did not believe the call connected, it did, but only for a short period of time. A recording of that call, during which you can clearly hear a woman screaming, was admitted into evidence. Prosecution Exhibit 3. KB further testified that the appellant then penetrated her vagina, with either his fingers or his penis, two times. KB testified that she was fighting with the appellant, screaming, and saying "no" to him throughout the assault. KB also testified that, as a result of the struggling, they both fell off the bed and ended up on the floor. KB then testified that the assault was interrupted by someone pounding on the door.

Lieutenant Colonel (Lt Col) T, USAF, who was staying in the room directly above the appellant's room, heard KB's screams and responded immediately. He testified that once he heard the commotion he ran down stairs and pounded on the door. During

3

the course of that response, Lt Col T called the police and told the appellant that he was under military apprehension, and that he needed to stand down and wait for the police to arrive. The appellant ignored those orders, got into his vehicle, and left the scene.

Additional facts necessary to resolve the assigned errors are included herein.

## Panel Member Selection

In his first assignment of error the appellant avers that members below the pay grade of E-7, and above the pay grade O-5, were impermissibly and systematically excluded from the nomination process by the CA. In July of 2008, Commander, Naval Air Force Atlantic issued an instruction to subordinate commands establishing the procedure for nominations of prospective court-martial members. That instruction directed each subordinate command to provide a certain number of nominees in the ranks of E-7 through O-5. The instruction did not call for nominees below E-7, regardless of how junior a particular appellant may be, and did not call for anyone O-6 or above.

The standard of review for the proper selection of a court-martial panel is *de novo. United States v. Kirkland* 53 M.J. 22, 24 (C.A.A.F. 2000). We look at three primary factors to determine whether an impermissible member selection has taken place:

1. Improper motive in packing a member pool;

2. Systematic exclusion of potential members based on rank or other impermissible variable; and,

3. Good faith attempts to be inclusive and open the court-martial process to the entirety of the military community.

*United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004). If either of the first two criteria is present, the process is impermissible. *Id.* These criteria are not only considered in the actual panel selection process, but also in the process of presenting nominations to the CA. *United States v. Roland*, 50 M.J. 66, 69 (C.A.A.F. 1999).

4

In a case of systematic exclusion of members by rank, it is the responsibility of the defense to establish the improper exclusion. *Kirkland*, 53 M.J. at 24. Once improper exclusion has been established, the burden is placed on the Government "to demonstrate that the error did not 'materially prejudice the substantial rights of the accused.'" *Dowty*, 60 M.J. at 173 (quoting Art. 59(a), UCMJ).

Although the record is clear that service members were impermissibly excluded from the member selection process by virtue of their rank, the question remains whether that improper nomination process materially prejudiced the appellant. In reviewing this case we find: (1) no evidence that the errant instruction was issued with an improper motive; (2) no evidence that the CA had an improper motive when detailing the members assigned to the appellant's court-martial; (3) the CA was a person authorized to convene a general court-martial; (4) the CA was properly advised of his Article 25 responsibilities, and that he could pick any member of his command, not just those who had been nominated; (5) the court members were personally chosen by the CA from a pool of eligible candidates; and, (6) the court members all met the criteria in Article 25, UCMJ. Under these circumstances, we are convinced that the appellant's case was heard by a fair and impartial panel, and that the error in this case was harmless. *See United States v. Bartlett*, 66 M.J. 426, 431 (C.A.A.F. 2008).

### Discovery of Member Selection Matters

In the course of the discovery process, civilian defense counsel requested all information which the CA and his advisors used in the nomination of prospective members and in the final selection of the court members for the court-martial orders issued in this case. The instruction discussed above, which had the effect of systematically excluding members below E-7 and above O-5, was not provided to the defense, despite their request.

Through Article 46, UCMJ, a military accused is granted the "equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Moreover, upon request, an appellant is permitted to inspect "papers . . . within the possession, custody, or

control of military authorities . . . which are material to the preparation of the defense." RULE FOR COURTS-MARTIAL 701(a)(2)(A), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

When determining whether there has been a discovery violation, this court must determine whether the evidence at issue was subject to discovery and, if so, determine what effect the failure to disclose had on the appellant's trial. *United States v. Roberts*, 59 M.J. 323, 325 (C.A.A.F. 2004). To be eligible for discovery by defense a document must be in the Government's possession or control and material to the preparation of the defense. R.C.M. 701(a)(2)(A). When there has been a discovery violation we test that violation for prejudice. In cases where the appellant either did not make a discovery request or made only a general request for discovery, the Government has the burden of proving that the error was harmless. However, in those cases where the appellant made a specific request for the undisclosed information, the Government must show that the error was harmless beyond a reasonable doubt. *Roberts*, 59 M.J. at 327.

Although the appellant did not ask for the instruction in question by name, his request was specific enough to trigger the heightened requirement of proof beyond a reasonable doubt. *See United States v. Webb,* 66 M.J. 89, 92 (C.A.A.F. 2008); *United States v. Gonzalez,* 62 M.J. 303, 304 (C.A.A.F. 2006); *United States v. Garlick*, 61 M.J. 346, 352 (C.A.A.F. 2005). However, even applying that higher standard, we find against the appellant. For the same reasons articulated above, we find that despite the discovery violation, the appellant was tried by a fair and impartial panel, and that the discovery error was harmless beyond a reasonable doubt.

### Legal and Factual Sufficiency

In his final assignment of error, the appellant asserts that his rape conviction is both legally and factually insufficient. We disagree.

We review questions of legal and factual sufficiency *de novo. United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). We review the legal sufficiency of the evidence by determining "whether, considering the evidence in the light most

6

favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the accused's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007). Beyond a reasonable doubt, however, does not mean that the evidence must be free from conflict. *Id.*

In this case, the evidence of the appellant's guilt was overwhelming. KB's allegations were supported by the 911 tape, which captured her screams during the assault, and by Lt Col T, who heard her pleas for help and rushed to the scene to lend assistance. The fact that she had engaged in sexual banter with the appellant on line, before they ever met, does little to undermine her credibility, or suggest that a reasonable person would have thought that she was consenting to the forcible acts the appellant committed.

After carefully reviewing the record of trial and considering the evidence in the light most favorable to the prosecution, we are convinced that a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

## Conclusion

Accordingly, the findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court